### In re RODGERS & HITE, Inc.

(District Court, E. D. Pennsylvania. February 21, 1906.)

### No. 2,002.

FIXTURES—MACHINERY INSTALLED BY CONTRACT PURCHASER OF REALTY—INTENTION OF PARTIES.

Machinery placed upon land by a purchaser under an executory contract does not become a part of the realty as between the vendor and purchaser, where there is a clearly expressed agreement between them that it shall remain the personal property of the purchaser, nor can the vendor, after the purchaser's bankruptcy, enforce a provision of the contract limiting the time within which such machinery might be removed by the purchaser in case of his default in making payment for the property, where such default was due to the fault of the vendor in failing to perfect the title until after the time for performance had expired and after the purchaser had become unable to perform, and where no claim of the right to enforce such forfeiture was made until after the bankruptcy.

[Ed. Note.—For cases in point, see vol. 23, Cent. Dig. Fixtures, § 47.]

In Bankruptcy. On question certified by the referee.

Henry C. Boyer, for trustee.

Montgomery Evans, for claimant.

HOLLAND, District Judge. The question certified to the court by the referee in this case is whether the machinery in the mill at

Conshohocken became a part of the freehold or belonged to the bankrupt's estate. The facts found by the referee, in the opinion accompanying the record, are in the main sustained by the evidence, an examination of which, however, shows that there are other facts and circumstances important in the determination of the question certified, and I shall, therefore, state the facts which appear to me relevant and which seem to be clearly established by the oral and written evidence taken before the referee: It appears that on the 17th day of January, 1903, J. Lesley Rodgers entered into an agreement with the executors of the Powers estate for the purchase of certain real estate in the borough of Conshohocken. This agreement of purchase, it is conceded, subsequently became the agreement of this bankrupt corporation, and all negotiations between the parties before and after the agreement had been executed, on the part of the owner, was through the owner's real estate agent. The agreement, or so much of it as is important here, is as follows:

"Whereas the party of the second part is about to enter into certain contracts for the purchase of boilers, electrical dynamos, tanks, and other machinery necessary for the operation of the plant to be established therein, which property will be purchased partially upon credit. Now it is hereby agreed that in event of the failure of the said party of the second part to carry out the provisions of this contract, that the parties of the first part shall have no lien upon said boilers, dynamos, machinery, etc., but the party of the second part or those from whom the same have been purchased, shall have the right to remove the same from said premises, provided that he or they leave the said real estate in the same condition as prior to this agreement, and satisfactory to the grantors, on the condition, however, that said boilers, dynamos, machinery, tanks, etc., shall be removed from said premises on or before the first day of May, A. D. 1903. In the event of the party of the second part failing to comply with the provisions of this agreement in respect of payment of said balance of the purchase money on or before the first day of May, A. D. 1903, it is expressly stipulated and agreed that the time for carrying out the provisions of this agreement shall be extended for the further period of one month, upon the payment by the said party of the second part of a rent rental of one hundred dollars, said payment to be made on May first, 1903. All personal property belonging to others than the grantors upon said premises to be subject to a lien for this rental until paid."

As between contract vendors and contract vendee, the presumption of law is (except as to trade fixtures, Smith v. Moore, 26 Ill. 392) that one who enters on land under an agreement to purchase it and annexes fixtures is permitted to do so with the intention to make them permanent and part of the realty. 19 Cyc. 1061. But not so if the contract vendor has given his consent to removal, or if he is himself in default in performing the contract to convey. 19 Cyc. 1061. Again, the policy of law is to favor trade, and chattels affixed to the realty for this purpose are allowed to remain a chattel. There are two cases decided by the Supreme Court of Pennsylvania, within a year of each other, which illustrate how completely the fact that a fixture has been annexed by a tenant, for the purpose of his trade, will change the nature of the act. In Morgan v. Arthurs, 3 Watts, 140, decided in September, 1834, the question was about a steam engine set up by the owner of the land to drive his sawmill, and it was held to be part of the realty. And in Lemar v. Miles, 4 Watts, 330,

decided in September, 1835, the court held that a steam engine set up by a tenant for the purpose of his trade, which was the manufacture of salt, was a chattel, and had not become part of the inheritance. See, also, Oves v. Ogelsby, 7 Watts, 106.

The test or criterion is, what was the intention of the party? And this question is one of fact. What, then, was the intention of the parties in the case at bar? The negotiations between the parties, prior to the execution of the contract, cannot alter its terms finally adopted, but we can look to the letters which passed between them to aid us in arriving at a proper understanding of the rights of the parties arising out of the agreement. The bankrupt, who was the contract vendee, on November 19, 1902, received a letter from the present claimants of this machinery, who were the contract vendors, wherein they state that they would give the bankrupt an option upon the property for 90 days, "provided it is clearly understood that, if the settlement should fall through, the $500.00 is to be forfeited, and also the machinery which you may place in the property in the meantime." This proposition as to the forfeiture of the machinery was first assented to, but subsequently, on the 29th of December, 1902, a counter proposition was submitted by the contract vendee, in which it was entirely rejected, and for the reason, as stated in a letter of that date, that it would be necessary to "purchase this machinery upon credit of from three to six months," and in order to enable them to secure it upon these terms they suggested that:

"It be expressly stipulated in the agreement of sale that in the event of their failure to carry out the conditions of the contract of sale, that the present owners shall have no lien upon the said machinery, but that said purchasers, or those from whom they have purchased the same, shall have the right to remove the same from the premises, leaving the property in as good order and repair as it now is."

To this counter proposition, the contract vendors replied on December 30, 1902, in which they stated:

"Your letter, I think, is satisfactory to us, with, however, this additional condition, viz., that in the event of failure to carry out the agreement of sale, the boilers, electric dynamos, machinery, tanks, etc., which are reserved to the use of the purchaser, shall be removed on or before May 1st, 1903, or in the event of failure to remove them at that time, a specified rental should be paid for the period within which they should definitely and positively be removed, not exceeding, say, one additional month."

Then followed the execution of the agreement in question, wherein the bankrupt reserved the right to remove the machinery, provided it shall be removed on or before the 1st day of May, 1903, which is the last day under the agreement for it to pay the purchase price of the real estate, and in language embodying in substance the suggestions contained in the letters of December 29th and 30th, but so altered in terms as to permit the vendee, upon the payment of $100, to obtain a month's extension of time for the payment of the purchase price, as well as for the removal of the machinery.

It is very plain that the intention of the parties was that the machinery should continue the property of the contract vendee, with

the right of removal within a certain time, subject to no claim on the part of the owners except a "lien for rental" on the property. This right was extended to July 31, 1903, by subsequent agreements. Was there any act or agreement on the part of the vendee, after the latter date down to the time of the institution of the bankruptcy proceedings, to forfeit this right of property in the machinery? It is true that the vendee was not prompt in examining the title and preparing the deed prior to the 1st day of May, 1903, but during that time they had secured a promise from the Norristown Trust Company to loan them a sum sufficient to pay the purchase price of the real estate. Counsel for the vendee shortly prior to May 1, 1903, discovered that there were some liens and incumbrances on the title that necessitated a postponement of settlement until they could be removed, and the time of performance of all the provisions of the contract was by written agreement extended to July 31, 1903, and rent was paid at the rate of $100 per month. The vendors had agreed to convey, "free and clear of all liens and incumbrances." It was their duty, therefore, to remove this objection to the title, and until this was done they were in default and in no position to claim the machinery, because of a failure to remove the same before the stipulated time. 19 Cyc. 1061. After the 31st day of July, 1903, the vendee refused to pay rent, upon advice of their counsel, for the reason that there was a defect in the title, and no subsequent payments were made.

It is also a fact of importance, in the determination of this case, that this machinery in dispute, which it is claimed by the vendors was to be removed on or before May 1st, or be forfeited to them, was not placed in the building until long after that date, and, in fact, the vendee did not finish the installment of it until October, 1903. These facts were known to the vendors, as a letter from them, dated September 30, 1903, shows, wherein they state that they received a letter from the vendee of September 29th stating that the "machinery had all been installed in the Albion Print Works"; and stating in the same letter that "it would be proper for us [vendors] to render a bill for the rent to September 25th." No rent, however, was paid, because the vendors up to that time had failed to clear the incumbrances upon the title, but subsequently, on the 17th of November, 1903, the vendors informed the vendee that the title was clear of incumbrances and they were ready to convey, and in the early part of December, 1903, tendered a deed to the vendee. At this time, however, the vendee was unable to perform by reason of the fact that the long delay had resulted in causing the trust company to refuse to make the loan because of a lack of funds.

The default of the vendors prevented them from asserting their right to claim the machinery down to the time when they were able to tender a deed for the premises, clear of incumbrances, and it remains to inquire what the understanding of the parties was from the date of the tender to the presentation of the petition in bankruptcy. The loan originally secured from the trust company, for the purpose of carrying out the contract, by reason of the long delay in removing the objections to the title, could not be had by the vendee when the

deed was tendered, and it was then unable to secure the money elsewhere. Of this fact the vendors were informed, and treated the provisions of the agreement as to the real estate and machinery as of no binding force upon them, and, with regard to the machinery, they continued to regard that as the property of the vendee or bankrupt. On December 24, 1903, the vendors, in a letter, urged the vendee "to execute an agreement which might be mutually satisfactory, under the terms of which they would pay interest upon the purchase price, in consideration of which the date of settlement was to be extended for a limited period, and as additional security vendee to execute a bill of sale for the machinery, etc., on the premises." It is very plain that at this time, notwithstanding the facts that this machinery had not been removed from the premises and no rent had been paid from July, the vendors conceded the ownership of the machinery to be in the vendee, and subsequent to the filing of the petition, when the vendors' representative called upon counsel for the bankrupt and requested him to vacate the premises and to remove the personal property therefrom, the language used, according to the vendee's counsel, who was a witness in the case, was such as to indicate a disclaimer of any ownership in the machinery. The only anxiety manifested on the part of the vendors was to have the vendee remove the same from the premises.

There is nothing in this whole case to indicate that at any time during the occupancy of these premises by the bankrupt it was the intention of either of the parties to the agreement to hold the fixtures forfeited to the vendors. The vendee paid the rental of $100 a month for three months for an extension of time, which it could have claimed because of vendors' default, and, having placed the vendee in a position where it was unable to perform, it would have been inequitable in them to have taken advantage of their own wrong to forfeit the ownership of the machinery which was placed on the premises by the bankrupt. This machinery was, then, as a matter of fact, the property of the alleged bankrupt at the time the petition in bankruptcy was filed in this court, and the title thereto, upon the institution of bankruptcy proceedings, passed into the hands of the receiver for distribution among the bankrupt's creditors.

The conclusion, therefore, is that the machinery placed in the mill did not become a part of the freehold, but belongs to the bankrupt's estate; and, as it had been sold by agreement of all parties, the fund should be paid over to the receiver.