## Central Lithograph Company *v.* Eatmor Chocolate Company (No. 1).

Argued October 4, 1934. Before Frazer, C. J., Simpson, Kephart, Schaffer, Maxey, Drew and Linn, JJ.

*Albert C. Hirsch,* with him *John M. Freeman, Ralph H. Demmler,* and *Watson & Freeman,* for appellant.

*Arthur D. Gatz,* for appellee.

OPINION BY MR. JUSTICE SCHAFFER, November 26, 1934:

This controversy grows out of the same sheriff's sale as the preceding case (Pennsylvania Chocolate Co. to use of Commonwealth Trust Co. v. Eatmor Chocolate Co.). Here we have to do with the claim of Eline's, Inc. to certain machinery which it had sold to Eatmor Chocolate Company under a conditional sale contract. Its right thereto was denied by the Commonwealth Trust Company, holder of the mortgage on the plant of the chocolate company and purchaser at the sale, and by the receivers of the chocolate company. The court below awarded the machines to the conditional vendor. The trust company appeals.

The conditional sale agreement is dated December 19, 1930. It covered certain candy making machinery, consisting of enrobers for chocolate coating candies, a mogul machine for casting candy centers, a plow machine for drying milk paste for chocolate, copper kettles, marshmallow beaters, conveyors and trucks, together with other appurtenant equipment. The machines constitute the major portion of the candy department of the chocolate company and, since installation, have been used in the manufacture of about half of the total output. The machines cover considerable space and are located on the second and fourth floors of the building. Some of this equipment extends from one building to

another through a wall. Parts of it are quite heavy, the plow machine weighing 16,000 pounds. The heavy machinery is kept rigid by its own weight. The lighter portions are bolted to the floor. It is connected with the water, gas, steam and electric lines of the plant. The trucks and trays are used for the transportation of materials and are a necessary part of the manufacturing process. If the machines should be removed, the building itself could be repaired at an expense of about $125.

The trust company had no notice or knowledge that the machines had been installed in the plant until the filing of the petition to reclaim. In its answer to the petition the trust company set forth that the machinery and equipment claimed were installed for permanent use as a necessary part of the manufacturing plant and could not lawfully be removed as against the prior mortgage. It was also alleged that Eline's, Inc., had failed to comply with the requirements of the Conditional Sales Act of May 12, 1925, P. L. 603, as amended, 69 P. S. section 361, et seq., in that the conditional sale agreement had not been filed within ten days after the making thereof, or refiled within thirty days prior to the expiration of three years thereafter, and in that the vendors had failed to sign a description of the real estate in which the subject of the sale was to be attached.

The court below decided that the machinery and equipment in question were severable from the freehold without material injury thereto, because the building itself, after the removal, could be repaired at a small cost. It overruled the contention of appellant that the words "realty" and "freehold" in the act, in the case of a manufacturing plant, mean every necessary part of it, including all its machinery and equipment, and that therefore the removal of a part would constitute a material and irreparable injury. It also held that, inasmuch as there would be no material injury to the freehold as defined, the conditional sale contract was not within the provi-

sions of section 7 of the Conditional Sales Act, and that appellant, as prior mortgagee, had no standing to complain of the failure to comply with the filing requirements of the statute.

We think that the lower court's view of what is included in the terms "realty" and "freehold" as used in the act * is too restricted, and the fact that the machinery can be removed without material injury to the building, not the controlling consideration. In this connection the court said the words used in the act "severable without material injury to the freehold" have reference to injury to the physical structure of the building. We think they imply much more, that the word "freehold" as used in the act embraces the entire operating plant and is used as Chief Justice GIBSON used it in Voorhis v. Freeman, 2 W. & S. 116, when he said: "Whether fast or loose,......all the machinery of a manufactory which is necessary to constitute it, and without which it would not be a manufactory at all, must pass for a part of the freehold."

In the preceding case the court below found, and we have adopted its finding, that "as the entire plant is now constituted, all of the machinery and equipment which have been installed therein since 1925 is indispensable to operations presently conducted." In Commonwealth Trust Co. v. Harkins, 312 Pa. 402, in which

---

* The section of the act provides (69 P. S., section 404): "As against an owner, a prior mortgagee, or other prior encumbrancer of the realty, who has not assented to the reservation of property in the goods, if any of the goods are so attached to the realty as not to be severable without material injury to the freehold, the reservation of property in the goods so attached shall be void, notwithstanding the filing of the contract or a copy thereof, unless such injury, although material, be such as can be completely repaired, and the seller, before retaking such goods, furnishes or tenders to such owner, prior mortgagee, or encumbrancer, a good and sufficient bond conditioned for the immediate making of such repairs. 'Prior,' as used in this paragraph, refers to the time of attaching the chattels to the realty."

we considered all our preceding cases bearing on the question we are now reviewing, whether cited or not, we laid down the broad principle that all machinery in a manufacturing plant, necessary for its operation as a complete going concern, is part of the freehold and bound by the lien of a mortgage thereon, and that it matters not when the machinery is installed, whether before or after the giving of the mortgage. The background for the principle there reaffirmed is found in the vigorous language of the great Chief Justice in Voorhis v. Freeman, part of which it may be well to quote again. Backing away from a previous decision, he says (page 117) : "It is true we ruled, in an unreported case (Chaffee v. Stewart), that the spindles and other unattached machinery in a cotton mill, were personal property for the purpose of execution, on the authority of certain decisions to that effect, because we were indisposed to be wise above what is written; but an examination of their foundation would probably have led us to a different conclusion. It is unnecessary to pass the learning of the subject in review, as a clear bird's-eye view of it has been spread before the profession by Mr. Justice COWEN in Walker v. Sherman (20 Wend. 636), from which it is evident that no distinctive principle pervades the cases universally, and that the simple criterion of physical attachment is so limited in its range, and so productive of contradiction even in regard to fixtures in dwellings to which it was adapted before England had become a manufacturing country, that it will answer for nothing else. My objection to the conclusion drawn from it in that case, is that the court adhered to the old distinction when the question related to a woolen factory, instead of following out the principle started by Mr. Justice WESTON in Farrar v. Stackhole, (6 Greenleaf 157), which must, sooner or later, rule every case of the sort. The courts will be drawn to it by its liberality and fitness, while they will be drawn away from the old criterion by its narrowness and want

of adaptation to the business and improvements of the age. By the mere force of habit, they have adhered to it in almost all cases after it has ceased to be a guide in any but a few; for nothing but a passive regard for old notions could have led them to treat machinery as personal property when it was palpably an integrant part of a manufactory or a mill, merely because it might be unscrewed or unstrapped, taken to pieces, and removed without injury to the building. It would be difficult to point out any sort of machinery, however complex in its structure, or by what means soever held in its place, which might not with care and trouble be taken to pieces and removed in the same way, and the greater or less facility with which it could be done would be too vague a thing to serve for a test. It would allow the stones, hoppers, bolts, meal-chests, skreens, scales, weights, elevators, hopper-boys, and running gears of a grist mill, as well as the hammers and bellows of a forge, and parts of many other buildings erected for manufactories, to be put into the class of personal property, when it would be palpably absurd to consider them such......A cotten-spinner, for instance, whose capital is chiefly invested in loose machinery, might be suddenly broken up in the midst of a thriving business, by suffering a creditor to gut his mill of everything which happened not to be spiked and riveted to the walls, and sell its bowels not only separately but piecemeal. A creditor might as well be allowed to sell the works of a clock, wheel by wheel......The bare walls of a building would be comparatively of little value. They might perhaps answer the purposes of a barn; but so might the walls of a dwelling, when deprived of their doors and windows, and why are these considered a part of a dwelling? Simply because it would be unfit for the purpose of a dwelling without them. What, then, is demanded in the case of a building erected for a manufactory, but an application of the same principle? Whether fast or loose, therefore, all

the machinery of a manufactory which is necessary to constitute it, and without which it would not be a manufactory at all, must pass for a part of the freehold." It was accordingly held that the rolls of an iron mill passed as a part of the freehold under the mortgage on the mill and the subsequent sale in execution thereof. If a party makes a chattel a permanent part of a manufacturing plant, such chattel *by force of law* becomes a part of the real estate and of the freehold.

In Clayton v. Lienhard, 312 Pa. 433, an automatic sprinkler system was installed in a large public garage, under a bailment lease agreement, in which it was stipulated that the system should not become a fixture or part of the real estate, but should remain the personal property of the lessor until determination of the lease and acceptance by the lessee of the option to purchase. We there said, speaking through Mr. Justice DREW (page 436) : "The equipment was of a permanent character, and from its nature, use and affixation became a part of the freehold......We should ignore stubborn physical facts and settled legal principles were we to regard this apparatus as not a part of the realty...... [page 438 et seq.] Since, as we have seen, the apparatus did become a part of the realty, the provision in the contract that it should remain personal property was of no effect......'Contract cannot make a chattel realty, nor realty a chattel.' ...... All fixtures, whilst attached to the freehold, are, for the time being, a part of the realty. No contract can change their nature......But a contract that something may be converted into personalty at a future day, does not make it so from the time of the contract......'We nullify stubborn fact here if we consider the machinery anything but real estate in fact. The plain actuality is, not that it remained personal property, but only that the vendor had the contract right by severance to retake it and so "reconvert it into personalty." The conditional sales contracts did not......pre-

serve "the status of the machinery as personal property until fully paid for." ' "

In Bullock Elec. Mfg. Co. v. Lehigh Valley Trac. Co., 231 Pa. 129, the traction company purchased generators on a conditional sale agreement and attached them to a power plant on which there was an existing mortgage. The mortgage was foreclosed and the property described therein, together with the generators, was sold. The conditional sale vendor of the generators brought suit in replevin but was denied recovery because the generators "became part of the realty, and as such were subject to the lien of the mortgage."

In American Laundry Machinery Co. v. Miners Trust Co., 307 Pa. 395, which was decided by us PER CURIAM, laundry machinery was furnished under bailment leases, and the broad question here presented was not passed upon. The point in issue, whether the machinery was personal or real property, was decided solely on the intention of the parties when it was installed. This is not the controlling factor in the present case.

If the machinery here involved can be taken away from the plant and from the lien of the mortgage, then it is possible to remove what may be said to be the very heart of the plant, so far as the manufacture of candies and confections is concerned, machinery which produces almost one-half of its capacity. Were we to so hold, then through the means of conditional sales agreements the integrity of manufacturing establishments can be completely destroyed, and mortgagees who had loaned their money on the faith of what they purported to be, manufacturing concerns, capable of producing the kind of materials for which they were designed, will find themselves confronted with an empty shell or a scrap heap as their security, in cases where machinery has been installed under such contracts after a mortgage is given, and when the mortgagee has no way in which he can protect himself, as he is not a party to the contracts.

Our holding as we do now can work no hardship on conditional sellers. Before they make delivery of their property to a purchaser whose plant is bound by a mortgage, all they need do to protect themselves, is to get the assent of the mortgagee to the removal of the articles in the event of default by the purchaser in his payments.

Holt v. Henley, 232 U. S. 637, and Detroit Steel Cooperage Co. v. Sisterville Brewing Co., 233 U. S. 715, cited by appellee, indicate that the Supreme Court of the United States has taken a view of controversies similar to the one in hand somewhat different from our own. These cases are not binding upon us and we think it the part of wisdom, considering the industrial situation in this Commonwealth, to adhere to the principles which have heretofore guided our decisions.

To give to the language used the meaning for which appellee contends and to which the court below assented would be to change our common law and "a change from the common law cannot be presumed; it must appear to have been meant, or it will be held not to have been made": Jessup & Moore Paper Co. v. Bryant Paper Co., 283 Pa. 434, 444; Merrick v. DuPont, 285 Pa. 368; March v. Phila. & West Chester Traction Co., 285 Pa. 413, 415.

We, therefore, hold that the words "realty" and "freehold" in the act mean the plant in its complete integrity, and that the words "material injury to the freehold," mean material injury to the operating plant and are not confined to injury to the physical structure of the building alone.

In view of the decision on the main question, others raised drop out of consideration.

The order of the court below is reversed at appellee's cost, and the machinery in question is awarded to the Commonwealth Trust Company.