Holland Furnace Company, Appellant, *v.*
Suzik et ux.

Argued April 18, 1935.

Before KELLER, P. J., CUN-
NINGHAM, BALDRIGE, STADTFELD, PARKER, JAMES and
RHODES, JJ.

*Harry J. Schmitt,* with him *Joseph A. Tritschler,* for
appellant.

*Thompson Bradshaw,* of *May & Bradshaw,* for ap-
pellees.

OPINION BY BALDRIGE, J., July 18, 1935:

In this action of replevin the plaintiff appeals from
a refusal of the learned court below to enter judgment
n. o. v. or to grant a new trial.

The furnace, the title to which is in dispute, was in-
stalled November 7, 1931, in a house, which was owned
at that time by Nick Suzik and Theresa Suzik, his
wife. The property was sold at sheriff's sale, and a deed,
dated May 13, 1933, was executed therefor to Stephen
Skapik, a judgment creditor. He conveyed it, by deed,

dated October 2, 1933, to Jessie A. Garrison, and either she or Skapik was in undisputed possession of the property, including the furnace, from the date of the sheriff's sale to the service of the writ of replevin, April 5, 1934. Nick and Theresa Suzik were named defendants in the writ and Mrs. Garrison was summoned as the party in possession of the property. She was permitted thereafter to intervene as a party defendant.

In the statement of claim, plaintiff based its title on a writing in the form of a conditional sale agreement, dated October 12, 1931, which was never recorded as required by our Conditional Sales Act of May 12, 1925, P. L. 603, No. 325, §5 (69 PS §402), and there was no evidence that either Skapik or Mrs. Garrison had any knowledge of its existence. The appellant, realizing its inability to recover under the conditional sale contract, advanced the contention that the furnace was personal property and that title thereto did not pass under the aforesaid deeds, but that, as the vendee breached the terms of the contract, title and right of possession remained in the vendor.

The learned court below submitted to the jury the question, whether the furnace, upon its installation, became a part of the real estate or remained personal property. Instructions were given that the test to be applied was the intention of the parties at the time the furnace was installed, and that in applying this test, consideration should be given not only to the terms of the contract, but also to the nature of the furnace itself as a part of the heating system of the house and the manner of installation. The jury concluded that the furnace, as installed, became a part of the real estate, and, accordingly, found a verdict in favor of Mrs. Garrison.

A witness called by plaintiff to show the different parts of the furnace, and the manner of installing it, testified that it consisted of a base plate, an ash pit, a

fire pot, combustion chamber, an outer casing, a hood, and three rings, all of which were assembled in the basement; that when these parts were put together and the furnace set up, it rested upon a cement floor in the cellar with a ring of cement laid at its base, and was connected with pipes in the walls which had served the old furnace.

The appellant argues (a) that the undisputed and uncontradicted testimony is that the heater can be removed from the premises without material injury to the real estate or to itself, and, therefore, remains personalty; and (b) that it was the intention of the parties at the time of the sale, as expressed in their written agreement, that the heater should remain personal property at all times.

In Central Lithograph Co. v. Eatmor Choc. Co. (No. 1), 316 Pa. 300, 306, 175 A. 697, certain machinery was sold to the chocolate company under a conditional sale contract, and, as here, the provisions of the Conditional Sales Act of 1925, supra, as amended (69 PS §361 et seq.) were not followed. The court below there held that the machinery was severable, as its removal did not cause material injury to the freehold, and, therefore, it was not real estate. In reversing, Mr. Justice SCHAFFER clearly states that the controlling question is not whether a removal causes material injury to the building, but to the operating plant, which includes all the machinery and equipment, and cites, with approval, an exhaustive opinion written by Mr. Chief Justice GIBSON, in Voorhis v. Freeman, 2 W. & S. 116, where the following language appears:

"It would be difficult to point out any sort of machinery, however complex in its structure, or by what means soever held in its place, which might not with care and trouble be taken to pieces and removed in the same way, and the greater or less facility with which it could be done would be too vague a thing to serve for

a test ...... The bare walls of a building would be comparatively of little value. They might perhaps answer the purposes of a barn; but so might the walls of a dwelling, when deprived of their doors and windows, and why are these considered a part of a dwelling? Simply because it would be unfit for the purpose of a dwelling without them."

True, the cases to which we have referred deal with the installation of machinery or equipment in manufacturing plants. Nevertheless, we think the principle is equally applicable to dwellings. Judge READER, in the course of his opinion, very well states that in these modern days a dwelling house essentially consists not only of the foundation, walls, roof, partitions, floors, etc., but lighting, heating, plumbing and sewage disposal systems also are regarded integral parts thereof. It is generally known that very few homes are now constructed without provisions for the installing of a furnace in the cellar. A heating plant is regarded as indispensable in this climate, and is usually considered a component part of the building.

Although this furnace might have been removed without serious injury to either the furnace or the house, its removal would have completely destroyed the heating system.

That brings us to the second proposition, namely, the intention of the parties. We think the statement in the conditional sale contract that the heater should remain personal property is not controlling in this case. In Clayton v. Lienhard, 312 Pa. 433, 167 A. 321, a sprinkler system was installed in a garage under a bailment lease agreement, which provided that the system should not become part of the real estate, but should remain personal property. Mr. Justice DREW, speaking for the court, said (pp. 436, 438):

"The equipment was of a permanent character, and from its nature, use and affixation became a part of the

freehold ...... We should ignore stubborn physical facts and settled legal principles were we to regard this apparatus as not a part of the realty. ...... Since, as we have seen, the apparatus did become a part of the realty, the provision in the contract that it should remain personal property was of no effect ...... 'Contract cannot make a chattel realty, nor realty a chattel.' "

This furnace was of a permanent character. It rested on a cement floor and parts of it were sealed together by cement, and for two and a half years it had been in a home, the ownership of which had changed three times in that period before any question of title was raised by the conditional sale vendor. We think it is now too late to give the property, by words in a sale contract, a nature which, in fact, it did not possess.

The appellant relies largely upon the case of Bank v. North, 160 Pa. 303, 28 A. 694, which involved title to radiators installed to provide steam heat in a house where no furnace was in the cellar. The steam was received from a central plant of an operating utility. Judge ENDLICH, whose opinion was adopted by the Supreme Court, said, in the course of his discussion (p. 307):

"The doctrine of the decisions [in cited cases] fully establishes the rule that, as to all articles not so intimately connected with the freehold as to become essentially a part of it, the intention, not the mere physical fact of their connection with the realty, is the criterion of annexation."

Here, as above stated, the furnace in the cellar of this dwelling is a vital part of the heating plant. We think it does not necessarily follow, because radiators were regarded as personal property in 1894, when that opinion was written, that furnaces in this modern day should not be considered so "intimately connected with the freehold as to become essentially a part of it."

Counsel for appellees, in support of his argument that the doctrine of estoppel bars plaintiff's recovery, succinctly stated: "Either the sale by appellant was conditional or it was absolute. Some sort of a title was in Suzik. If absolute, appellant has no standing because it has parted with the whole title. If conditional, appellant has no standing because in law [its] failure to file the contract has rendered the title absolute in protection of an intervening purchaser for value without notice." There are many decisions in this Commonwealth, which have uniformly held that an innocent purchaser for value from a conditional vendee in possession acquired the title to personal property as against the vendor: Anchor Concrete M. Co. v. Pa. Brick & Tile Co., 292 Pa. 86, 140 A. 766. See, also, Callahan v. Union Trust Co. of Pgh., 315 Pa. 274, 172 A. 684.

The appellant alleges that the theory of estoppel was not raised in the court below and can not be considered now. Mrs. Garrison, however, in her affidavit of defense, alleged that the conditional sale contract was void as against her, as it did not comply, and was not filed in accordance, with the requirements of the Conditional Sales Act, and she submitted a point for binding instructions in her favor. We think this was sufficient for the court to consider, as it did in its opinion, the question whether or not the plaintiff established the right to recover the property in dispute. We are inclined to the view that the lower court could have disposed of this case by directing a verdict in favor of the defendant as requested.

In view of the circumstances presented in this case, including the appellant's allowing this alleged personal property to which it claims title to remain in the possession of Skapik and Mrs. Garrison, as apparent owners, from May 13, 1933, to April 5, 1934, certainly the appellant was not entitled to receive more favorable

consideration than was given it by the trial judge in submitting to the jury the issues we have outlined. A careful consideration of the entire record fails to convince us that the appellant is entitled to the relief it seeks.

Judgment is affirmed.