## OTIS ELEVATOR CO. v. AREY-HAUSER CO. et al.

No. 17074.

District Court, E. D. Pennsylvania.

Jan. 26, 1938.

Edmonds, Obermayer & Rebmann, Evans, Bayard & Frick, and Richardson Dilworth, all of Philadelphia, Pa., for plaintiff.

C. S. Wesley, of Philadelphia, Pa., for defendant Arey-Hauser Co.

W. N. L. West, of Philadelphia, Pa., for defendant Medical Towers.

Earl G. Harrison, of Philadelphia, Pa., for defendant Pennsylvania Co.

DICKINSON, District Judge.

Leave was given to file briefs. Pending their submission, we were asked to grant an imparlance to afford parties an opportunity to reach an agreement. This has had no result and the withheld briefs have now been submitted with a request for a ruling.

The action, although in form replevin, is really an amicable action to have determined the right of the plaintiff to recover a set of elevators which it had installed in an apartment house belonging to the defendant, and subject to a mortgage held by the Pennsylvania Company, trustee for bondholders. The installation was made under an agreement with the general contractor who built the apartment house. The general fact situation is that of the usual project of the owner of land erecting an apartment house building which here passed to one of the defendants as operating owner. The project was made the subject of an agreement with a general contractor for the construction of the building, including installed elevators. Incidentally, the general contractor here agreed that nothing which went into the building should be the subject of a conditional sales contract. In order to finance the project, a mortgage was executed to the Pennsylvania Company to secure an issue of bonds, the sale of which would provide funds to pay in part for the cost of construction. The mortgage moneys were to be advanced as the construction progressed. The general

contractor contracted with the plaintiff to install the elevators. This was done under a conditional sales contract, reserving title to the elevators in the plaintiff if the purchase price was not paid. The purchase price was $79,922. Of this $24,927.81 was not paid. Thereupon the plaintiff asserted its right to reclaim and remove the elevators as its property. This right is denied by the defendant as owner of the property and by the mortgagee. We limit the discussion to this one somewhat narrow question.

## Discussion.

We think it will have a clarifying effect to consider the rights of the parties, first, as unaffected by the Conditional Sales Act, and, second, as created by that act.

### 1. The Rights of the Parties at What is Called Common Law.

There would be no doubt that without the Conditional Sales Act the plaintiff could not assert its claimed right. This would be for two reasons. In the first place, the plaintiff sold these elevators to the general contractor and delivered possession. As against an innocent purchaser for value, as the owner of the premises and the mortgagee might be held to be, the plaintiff could not retain title as security for the unpaid purchase price, except possibly under a so-called bailment lease contract. In the second place, the law of Pennsylvania has been held to be, at least in the case of so-called "Plants," that if personal property is brought upon the premises with the intention of incorporating it with the real estate, it thereby becomes a real fixture part of the real estate and cannot be removed therefrom to the prejudice of a mortgagee.

Viewing this apartment house as a "Plant" or what is called "an operating unit," no one would deny that the elevator system was part of it or that the elevators were installed with the intention to make them, in this sense, a part of the real estate.

Without further discussion, we assume that under the law of Pennsylvania the plaintiff could not, without the Conditional Sales Act, assert title to these elevators.

### 2. The Conditional Sales Act.

In discussing this, we are assuming that there has been compliance with all the requirements of the act. It may be here noted that the transaction with which this case concerns itself was before the passage of the amendment of 1935. The

contract for the construction of the building bears date October 17, 1929. The installation of the elevators was under a contract dated February 18, 1931. We are in consequence limited to the provisions of the Act of May 12, 1925, P.L. 603, as amended in 1927, Act May 12, 1927, P.L. 979, 69 P.S.Pa. § 361 et seq. The fact that a second act was passed in 1925 on this subject, Act May 14, 1925, P.L. 722, indicates some confusion in the legislative mind, but as this latter act was repealed in 1927, we are not directly concerned with it, except in so far as it may throw light on the legislative intent.

█ Let us be reminded that the question upon which we are passing is a very narrow question. Without the Conditional Sales Act, the plaintiff has no case. That act has two main objectives. One is to repeal the Statute of Elizabeth and to change the otherwise law so as to permit a vendor to retain title until the purchase price is paid. The other is to provide exceptions to the new rule. Among the latter are (1) vendors who fail to comply with the act; (2) property intended to be resold; and (3) fixtures or chattels intended to be made part of real estate.

█ The present case clearly comes within the fixtures class. The act provided for purchasers and mortgagees and cases (1) in which the conditional sale was before, and (2) for those cases in which it was after the purchase or mortgage.

This case concerns itself with the latter class. The applicable provision is that of the second subdivision of section 7, as amended, 69 P.S.Pa. § 404, subd. 2. This provided that the reservation of title shall be void as to any goods "so attached to the realty as not to be severable without material injury to the freehold," otherwise to be valid.

The question before us thus narrows itself into the simple one of whether these elevators were so attached. It has often been observed that it is one of the merits or defects of the English language that it has no words (other than technical terms) which in and of themselves mean anything. The meaning always is that of the sense in which used. When we have occasion to refer to the things with which this case concerns itself, we are supplied with the word "property" which may be real or personal. We have also, the words buildings, structures, premises, fixtures, land, real estate,

realty, and freehold. Within comparatively recent years our language has been enriched by a new use of the old word "Plant." It is an organized physical equipment to produce any desired result, or, as it has been phrased, it is an "operating unit." Some of these terms are applied to physical things; others to an estate or property interest in things. Had the framer of this act used the phrase of material injury "to the building or structure to which the fixtures are attached," there would be no doubt of what was meant. He chose however the words "realty" and "freehold." In strictness, these are words of art. They are not applied to things but to an estate or property interest in things real as distinguished from personal. Freehold carries the thought not merely of a possessory right but of possession and for a duration of not less than a lifetime. It is clear that the word "freehold" is not employed in its technical meaning. In what sense is it used? A somewhat carping criticism may be directed to the use of the word "material" in the phrase "material injury." A material injury may mean a physical injury or a substantial one. Without doubt it is here used in the latter sense. The real question is whether the word "freehold" has the meaning of "structure" or that of "plant." The answer of which we are in search is to the question which is thus best presented. We start with the proposition, before announced, that without the Conditional Sales Act the plaintiff, under the law of Pennsylvania, has no case. It asserts, however, that by that act its title to these elevators is preserved to it if they can be removed and the physical premises returned to the condition in which they were before the elevators were installed.

The defendants, on the other hand, assert that these elevators by their installation become an integral part of these apartment house premises or the plant there operated and that they cannot be removed without "material injury to the freehold," which means the premises as an apartment house or plant. The question presented thus becomes (1) first one of a fact finding, and (2) one of construction of the Conditional Sales Act.

We dispose of the question of fact by the finding that the elevators may be removed and the building premises left in the condition in which they were before the installation of the elevators, and that in this sense there is no physical injury to the building structure.

We also find, however, that the installed elevator system is an integral part of the apartment house equipment, and that its removal will do material injury to the apartment house premises as such because the apartment house business cannot be conducted without elevators.

This brings us to the question of the meaning of the word "freehold." Does it apply to the physical premises as a building or structure or does it include the apartment house use which is made of them?

Without prolonging the discussion, a subsequent provision of the act would seem to be decisive of the question. That is the provision to the effect that if "repairs" are made necessary by the removal, bond shall be given to assure their being made. It is impossible to give effect to this provision unless the word "freehold" is given the meaning of a physical thing and "injury" means physical injury.

So holding, we make the further finding that the elevators in question can be removed "without material injury to the freehold" and that it follows that they may be removed by the plaintiff as its property. It only remains to test the soundness of this conclusion by the adjudged cases to which we have been referred.

Bowser & Co. v. Franklin, etc., Co., 305 Pa. 459, 158 A. 170, was not a Conditional Sales Act transaction but a so-called bailment. It consequently has no application.

In re Imber Bros., D.C., 5 F.Supp. 513, has no application because there the Conditional Sales Act was not recorded nor were the chattels fixtures.

Holland Co. v. Suzik, 118 Pa.Super. 405, 180 A. 38, has likewise no application for the like reasons.

Moller v. Mainker, 314 Pa. 314, 171 A. 476, supports the conclusion we have reached.

So likewise does National, etc., Co. v. Mishler Co., 312 Pa. 250, 167 A. 324.

Ridgway, etc., Co. v. Werder, 287 Pa. 358, 135 A. 216, was not a conditional sales case.

The main reliance of the defendants is upon the case of Central Lithograph Co. v. Eatmor Chocolate Co., 316 Pa. 300, 175 A. 697. The opinion in this case should be read with that in Pennsylvania Chocolate Co. v. Hershey Bros., 316 Pa. 292, 175 A. 694, 99 A.L.R. 139, which immediately

precedes it in the reports. Hershey or the Eatmor Chocolate Company had installed certain machinery in a plant then subject to a mortgage. Receivers were appointed for the chocolate company. The mortgage was foreclosed and the premises sold at sheriff's sale. A rule was entered to set aside the sheriff's sale by the receivers on the ground that the machinery was personal property not subject to the mortgage. The rule was discharged. It is evident that the case was ruled on the old accepted doctrine that personal property affixed to real estate and incorporated with so as to become part of a mortgaged manufacturing plant became real estate and subject to an existing mortgage. The ruling does not affect the instant case. The Eatmor Case is more nearly in point and it must be conceded, seems, at a hasty ruling, to construe the discussed clause of the Conditional Sales Act. It may be noted that the ruling was made in 1934 when the court did not have the light shed upon the legislative meaning of the acts of 1925 and 1927 by the act of 1935. Since then its meaning could not be doubted. We agree, of course, that the act of 1935 has only persuasive force, if any, on the meaning of the earlier acts.

In the Eatmor Case the property in question had been made the subject of a conditional sale. The vendor, however, acquired no rights under the Conditional Sales Act if it had not complied with its provisions and the fact was that it had not in vital particulars. The case in consequence was that of one before the act of 1925. The ruling, it is true, was not put on this ground, but it was in the mind of the court because mentioned in the opinion. The ruling was in consequence no more than a reiteration of the old doctrine that chattels incorporated with a manufacturing plant become real estate. A reading of the opinion shows this to be the dominating thought throughout. We have no quarrel with this doctrine, but it does not apply to the case before us, although it did apply to the Eatmor Case because the vendor there could not support his claim by the Conditional Sales Act. There is, however, this which may be said of the doctrine laid down. The old test of fixtures was their attachment to the real estate. There is substantial justice in the thought that fixtures which cannot be detached without injury to the freehold cannot be removed to the prejudice of a mortgagee because incorporated with and a part of the real estate. The test is later said to be one of intention. If intended to be made part of the real estate, chattels become real estate. Whose intention? Obviously, the intention of the owner of the chattel. If he is the mortgagor or the owner of the real estate, such an intention may be imputed to him. If, however, the chattel belongs to a conditional sales vendor, it would be absurd to impute to him an intention to give his property to a mortgagee. The act of 1925 in consequence returned to the test of fixity. This at first was as far as the doctrine of intention went, and thus far is sound. Some of the later cases, it is true, expanded it into a policy of the law to encourage manufacturing plants. The latter thought is plainly avowed in the opinion in the Eatmor Case. It is laid down "as the part of wisdom considering the industrial situation in this commonwealth." It is frankly admitted to be out of harmony with the doctrine of the Supreme Court in the cases of Holt v. Henley, 232 U.S. 637, 34 S.Ct. 459, 58 L.Ed. 767; Detroit Steel Co. v. Sistersville Co., 233 U.S. 712, 715, 34 S.Ct. 753, 58 L.Ed. 1166.

We freely admit that this case having to do with title to property and emphatically with a Pennsylvania statute, the law of the case is the law of Pennsylvania. All we say is, what we have already several times said, that without the Conditional Sales Act the plaintiff has no case, but that act was passed for the very purpose of changing the law so as to give to vendors the right to retain title until the purchase price is fully paid and that it applies to chattels which have become real estate fixtures, if they can be detached and removed so as to leave the real estate in the condition in which it was before and when the fixtures were installed. The Eatmor Case may be said to lay down a different doctrine, but it is expressly limited to manufacturing plants. Here the attempt is to extend it to all structures.

We do not discuss cases arising in other states than Pennsylvania because we do not have ready access to them.