**In re TAYLOR & DEAN MFG. CO.**
**Appeal of SPROUL.**
**No. 8247.**

Circuit Court of Appeals, Third Circuit.
Argued March 2, 1943.
Decided June 7, 1943.

---

William A. Meyer, of Pittsburgh, Pa. (A. E. Kountz and Kountz & Fry, all of Pittsburgh, Pa., on the brief), for appellant.

P. K. Motheral, of Pittsburgh, Pa. (Reed, Smith, Shaw & McClay, of Pittsburgh, Pa., on the brief), for appellee.

Before MARIS, JONES, and GOODRICH, Circuit Judges.

GOODRICH, Circuit Judge.

This appeal involves a controversy between the assignee of a mortgagee and the trustee in bankruptcy of a manufacturing corporation. The conflicting claims are to the proceeds of the sale of machinery upon the bankrupt's premises and turn upon the rights of the parties under the law of Pennsylvania relating to industrial mortgages. The fact background is as follows:

Anthony C. Dean had conducted, from 1910 or earlier, an ornamental iron and wire manufacturing business in a four-story building, known as 2428 Penn Avenue, Pittsburgh. The building and the lot on which it stood belonged to Dean. He also used in his manufacturing business an adjoining two-story building leased to him by the Denny Estate. On Dean's death in 1923 the manufacturing business passed to his nephews, Alfred E. Dean and Irwin J. Dean. In 1937 and 1938 the business was turned over to the Taylor & Dean Manufacturing Company, a corporation, the bankrupt. On May 20, 1932, Alfred E. Dean, Irwin J. Dean, the remaindermen of the Dean property, and Annie McNally, the life tenant,[1] executed a mortgage to the Potter Title and Mortgage Guarantee Company to secure payment of a loan of $10,000. The petitioners herein are the assignees of that mortgage. The mortgage described the premises at 2428 Penn Avenue by metes and bounds followed by the recital "having thereon erected a four-story brick building" and the following clauses:

"Together with all and singular the buildings and improvements, streets, alleys, passages, ways, waters, water-courses, rights, liberties, privileges, hereditaments, and appurtenances, whatsoever thereunto belonging, or in any way appertaining, and the reversions and remainders thereof.

"To have and Hold the said described lot or piece of ground with buildings, hereditaments and premises thereby granted and conveyed, with the appurtenances, unto

[1] The property at 2428 Penn Avenue was devised to Mary J. Dean and on her death, on October 29, 1930, it passed by her will as stated above.

said Mortgagee, its successors and assigns. * * * "

By a deed dated December 1, 1937, the premises were conveyed to the present bankrupt.

When the mortgage was executed there was a machine shop in the basement of the four-story building, the first floor was used largely for office and shipping room, and there was some machinery on every floor. Up until and including that time there was manufactured in that building wire work and ornamental iron work, including wire guards, wire railings, iron guards and iron railings. The building on the Denny Estate property was used for heavier manufacturing including fire escapes and stairways. About a year after the execution of the mortgage the Denny Estate building was vacated and all the machinery contained therein moved to the mortgaged premises. Thereafter all the firm's manufacturing was done at 2428 Penn Avenue. When business became bad there was no need to use all of the machinery in that building and the manufacturing was done on the lower floors. When machinery was not needed for use it was stored on the upper floors, whence it was taken and used as occasion required. Most of the machinery here in controversy was bolted to the wooden floors, but could be removed without injury to the structure of the building. There was also in the collection a quantity of portable articles, such as hand tools, electric drills and a welding machine.

The mortgage was foreclosed and the premises, 2428 Penn Avenue, were sold on March 3, 1941, to the petitioners. In the sheriff's return, advertisements and deed the description of the premises was followed with the statement "having thereon erected a four-story brick building * * * " nothing being said respecting the purpose for which the building was used or respecting the machinery and equipment.

■ The proceeds of the sale are claimed by the trustee, on behalf of the bankrupt estate and by the successor to the interest of the mortgagee. The latter's rights depend upon whether the mortgage gave the grantee therein a security claim to the machinery including both that which was in the building when the mortgage was executed and that brought there when the Denny lease was given up. This is solely a question of Pennsylvania law. Since it is now clear that we are to find the Pennsylvania law from the state decisions, if there are cases in point, opinions in this Court at a time when that duty was not so clearly imposed, do not need to be analyzed. The question is the scope of a mortgage on industrial property in Pennsylvania,[2] and, as the Pennsylvania Supreme Court has said,[3] "Cases from other states, * * *, have no bearing on the controversy. We have established a legal rule of our own, necessary, as we view it, to the safety of investments."

■ The Pennsylvania view of what machinery is included in a mortgage of industrial premises has been many times stated and restated since the leading case of Voorhis v. Freeman, 1841, 2 Watts & S. 116; 37 Am.Dec. 490. There it was said for the court by Gibson, C. J., "Whether fast or loose, * * *, all the machinery of a manufactory which is necessary to constitute it, and without which it would not be a manufactory at all, must pass for a part of the freehold." The latest pronouncement which we have found is in McClure v. Atlantic Rock Co., Inc., 1940, 339 Pa. 296, 300, 14 A.2d 124, 126, where the court quoted with approval from Pennsylvania Chocolate Company v. Hershey Brothers (No. 1), 1934, 316 Pa. 292, 299, 175 A. 694, 696, 99 A.L.R. 139 to the effect that "Chattels placed in an industrial establishment for permanent use, and necessary to the operation of the plant, become fixtures and hence a part of the real estate, regardless of whether they are physically attached thereto." And, in Central Lithograph Company v. Eatmor Chocolate Company (No. 1), 1934, 316 Pa. 300, 305, 175 A. 697, 699 it was said of a mortgage for an industrial building that " * * * all machinery in a manufacturing plant, necessary for its operation as a complete going concern, is part of the freehold and bound by the lien of a mortgage thereon, * * *."[4]

---

[2] We are not concerned here with the extent to which the same rules are to be applied to premises used for other than industrial use. Cf. Medical Tower Corporation v. Otis Elevator Co., 3 Cir., 1939, 104 F.2d 133; Clayton v. Lienhard, 1933, 312 Pa. 433, 167 A. 321.

[3] In Commonwealth Trust Company of Pittsburgh v. Harkins, 1933, 312 Pa. 402, 407, 167 A. 278, 280.

[4] A series of five decisions all growing out of a receivership of a large chocolate manufacturing concern, and handed down the same day by the Supreme Court of Pennsylvania, cover most of the problems involved in the industrial mortgage

That these statements represent the Pennsylvania rule is not disputed by the trustee. It is his claim, however, that the Pennsylvania decisions also say that the intention of the parties governs the question of whether a mortgage of industrial premises also includes the permanent machinery therein. He points to the findings of the referee that it was not the intention of Alfred E. Dean to include the machinery and equipment in the mortgage and that there was no conversation concerning the subject of machinery at the time the mortgage was executed.

This point was raised and discussed in Roos v. Fairy Silk Mills, 1939, 334 Pa. 305, 5 A.2d 569. In that case there was involved a mortgage of industrial premises. An appurtenance clause in that mortgage was almost identical with the one here. The court, citing Commonwealth Trust Company of Pittsburgh v. Harkins, 1933, 312 Pa. 402, 167 A. 278 stated in effect that a building and appurtenance clause in a mortgage covering an industrial establishment would include all machinery and fixtures comprising the establishment as a completed plant. In regard to the intention of the parties the court said, 334 Pa. at page 311, 5 A.2d at page 572, that "The words of an appurtenance clause used in a mortgage such as this cannot be limited to a different meaning unless the testimony come[s] under the rule of evidence necessary to reform a written instrument. The burden would be * * * on * * * the one who benefits by the reformation."

■ It should be added that in the Roos case the court found other circumstances which indicated that the mortgage covered the machinery in addition to the physical building. However it is clear that the proposition to be deduced from that case is that an appurtenance clause, such as is here present, in a mortgage of a building used for industrial purposes, such as here, includes the necessary machinery. What has happened in the development of the doctrine is that an inference originally based on a supposed intention of the parties to a mortgage transaction has crystallized into a rule of law predicated upon the desirability of protecting the safety of investments. Expression of intention by the parties is not necessary. Indeed, in some instances at least, it will be denied effect. Clayton v. Lienhard, 1933, 312 Pa. 433, 167 A. 321.

■■ The effect of the grant being established as a matter of law, the testimony of Dean as to what he intended the mortgage to cover cannot, under the Roos case, be used to cut it down. If the machinery was such as to be necessary to the operation of the plant as a going concern it was covered by the mortgage. On that issue the finding of the referee is conclusive. He found that from the time prior to the creation of the mortgage to the time of the receivership sale the machinery and tools in question were necessary to and were used in the manufacturing of the products of Taylor & Dean; that during said period of time the building at 2428 Penn Avenue was a manufactory and that the machinery and tools which were contained therein prior to May 20, 1932, and those which were transferred thereto from the adjoining building, about 1933, were essential parts of such manufactory. The fact that some of the machinery was brought into the plant after the mortgage was given does not exclude it from the effect of the mortgage transaction. Pennsylvania Chocolate Company v. Hershey Brothers, 1934, (No. 1) 316 Pa. 292, 175 A. 694, 99 A.L.R. 139.

It is true that there is no evidence that the parties intended the machinery to have permanent use in the building. However, as pointed out, the referee did find that the machinery and equipment were used over a period of years to the time of the receiver's sale and were essential parts in the manufactory at 2428 Penn Avenue. True, a number of the items were not in constant use. But that is not required. See Voorhis v. Freeman, supra, 2 Watts & S. at page 120, 37 Am.Dec. 490. Under such circumstances, it is clear that the machinery was for such permanent use in the manufactory as is required by the Pennsylvania decisions.

Affirmed.

---

doctrine in Pennsylvania. They are: Pennsylvania Chocolate Company v. Hershey Brothers (No. 1), 1934, 316 Pa. 292, 175 A. 694, 99 A.L.R. 139; Central Lithograph Company v. Eatmor Chocolate Company (No. 1), 1934, 316 Pa. 300, 175 A. 697; Central Lithograph Company v. Eatmor Chocolate Company (No. 2), 1934, 316 Pa. 310, 155 A. 702; Central Lithograph Company v. Eatmor Chocolate Company (No. 3), 1934, 316 Pa. 312, 175 A. 701; Pennsylvania Chocolate Company v. Hershey Brothers (No. 2), 1934, 316 Pa. 315, 175 A. 703