**In the Matter of Donald FARRIER, and Dolores Farrier, a/k/a Dolores A. Kendall, Debtors.**

**Donald FARRIER, and Dolores Farrier, a/k/a Dolores A. Kendall, Plaintiffs,**

**v.**

**OLD REPUBLIC INSURANCE COMPANY, successors in interest to Mellon Bank N.A., and Donald R. Calaiaro, Defendants,**

**and**

**the Second National Bank of Masontown, Intervenor.**

**Bankruptcy No. 84–445.
Motion No. 85–4700.**

United States Bankruptcy Court, W.D. Pennsylvania.

June 17, 1986.

Francis E. Corbett, Pittsburgh, Pa., for debtors.

Ralph J. Saldamarco, Pittsburgh, Pa., Trustee.

Russell I. Jenkins, Uniontown, Pa., for Second Nat. Bank of Masontown.

David K. Rudov, Rudov & Stein, Pittsburgh, Pa., for Old Republic Ins. Co.

## MEMORANDUM OPINION

BERNARD MARKOVITZ, Bankruptcy Judge.

Before the Court is a dispute as to proceeds received from the sale of an above-ground swimming pool in this Court on January 16, 1986. Old Republic Insurance Company (hereinafter "Old Republic") claims that it is the assignee of a perfected security interest in consumer goods (the swimming pool) and therefore has a right to the proceeds from the sale. Second National Bank of Masontown (hereinafter the "Bank") holds a mortgage on the real estate where the swimming pool was installed.

The Bank asserts that upon installation the swimming pool became a fixture, requiring the secured party to execute a "fixture-filing", pursuant to the Uniform Commercial Code, in order to remain perfected. As the secured party has not perfected its

claim, the Bank argues it has the first priority as to the sale proceeds.

The parties have submitted briefs on the issues to be decided. Based upon the Stipulation of Facts contained in the briefs and the Courts further extensive research, we determine that the swimming pool in question is not a fixture requiring a "fixture filing". Further, the Court finds that Old Republic possessed a valid purchase money security interest entitling Old Republic to the proceeds from the sale of the swimming pool.

## FACTS

On July 3, 1981, the Debtor entered into a contract with BPI Industries for the installation of an above-ground swimming pool. The contract consisted of a Pennsylvania Home Improvement Installment Contract and a Contract Addendum. Said document provided that the holder was granted a Uniform Commercial Code security interest in all goods furnished under the contract and that the holder could at any time confess judgment against the Buyer; said confessed judgment acting as a lien on the Buyer's real estate.

On July 16, 1981, Donald Farrier executed a "Certificate of Buyer", which states that the swimming pool was satisfactorily installed and completed. Some time subsequent to the execution of this Certificate, BPI sold the contract to Mellon Bank.

By deed dated August 12, 1981, and recorded August 17, 1981, Anna M. Kendall conveyed the realty commonly known as 18 Melinda Street, Hopwood, Pennsylvania, to Donald Farrier and Dolores Farrier (a/k/a Dolores A. Kendall). Simultaneously, a mortgage on this property was recorded designating the Bank as mortgagee.

On September 8, 1981, Mellon confessed judgment against the Debtors, said judgment being in the face amount of $6,644.40. Thereafter, the Debtors defaulted on their installment contract with Mellon, who then demanded indemnification for the default from its insurance company, Old Republic. On or about February 3, 1983, Old Republic

indemnified Mellon, in consideration for which Mellon assigned all of its title and interest in the contract to Old Republic.

Approximately one (1) year later the Debtors filed a voluntary Chapter 13 petition in bankruptcy. On November 19, 1985, the Debtors filed a Complaint To Sell Real Property Free And Clear Of All Liens And Encumbrances. On December 6, 1985, the Bank answered and requested permission to intervene. Thereafter, on January 16, 1986, sale of the swimming pool to Lloyd Kendall was confirmed. The proceeds of that sale, $2,000.00 were held subject to the claims of Old Republic and the Bank.

Further, this Court conditioned the sale on payment of $150.00 to the Debtors' counsel for the professional fees he incurred in bringing the sale. Debtors' counsel was ordered to escrow the sale proceeds pending a determination by this Court as to which party, Old Republic or the Bank, is the valid lienholder.

### ANALYSIS

Our first determination must be the status of the swimming pool as an item of personalty or as a fixture. If the pool is a fixture, the validity of Old Republic's security interest is moot, since it is admitted that no "fixture filing" occurred.

A "fixture filing" is a financing statement filed in the office where a mortgage on the real estate would be filed or recorded. 13 Pa. C.S.A. § 9313(a). Said financing statement must show that the collateral covered by the statement is a fixture, must state that it is to be filed in the real estate records and must describe the appurtenant real estate. 13 Pa. C.S.A. § 9402(e). If collateral, deemed a fixture, is not properly perfected with a fixture filing, a subsequent mortgagee of the appurtenant real estate would have a priority interest in the collateral over and above that of the secured creditor.

"Fixtures" are defined as goods which become so related to particular real estate that an interest in them arises under real estate law. 13 Pa. C.S.A. § 9313(a).

Comment 3 to this section separates goods into three categories:

(1) those which retain their chattel character entirely and are not part of the real estate;

(2) ordinary building materials which have become an integral part of the real estate and cannot retain their chattel character for purposes of finance; and,

(3) an intermediate class which has become real estate for certain purposes, but as to which chattel financing may be preserved.

The question of whether specific goods have become part of the real estate, so as to constitute fixtures, is a matter of state law. However, the substantive law in Pennsylvania regarding fixtures is neither clear nor precise. Additionally, our research has not found another Pennsylvania court or another court in any other state adopting the U.C.C., which has addressed the question of fixtures as it relates to an above-ground swimming pool. We therefore reach our conclusion by analyzing those Pennsylvania cases which have discussed the law of fixtures, and then determine the swimming pool's status.

The first attempt by a Pennsylvania Supreme Court to classify personalty used in conjunction with realty was *Clayton v. Leinhard*, 312 Pa. 433, 167 A. 321 (1933). In that case the Court created three (3) classifications of such chattel.

These characteristics, which closely parallel those outlined in Comment 3, *supra*, include:

(1) Those which are manifestly furniture, as distinguished from improvements, and which are not particularly fitted to the property with which they are used; these always remain personalty.

(2) Those which are so annexed to the property that they cannot be removed without material injury to the real estate or to themselves, these are realty, even when the express intention

is that they should be considered personalty.

(3) Those which, through physically connected with real estate, are so affixed as to be removeable without destroying or materially injuring the chattels themselves or the property to which they are annexed; these become part of the realty or remain personalty depending upon the intention of the parties at the time of annexation.

These characteristics of annexation, adaption and intention are the elements which must be considered in determining whether this swimming pool is a fixture. However, many Pennsylvania courts have held that the intention of the parties at the time of annexation is the paramount criterion. *See O'Donnell v. Schneeweis,* 73 D. & C.2d 400 (1975); *In re Kann,* 6 U.C.C. Rep. 622 (D.C. E.D.Pa.1969); *Hartman v. Fulton County,* 24 D. & C.2d 611 (1960); *Royal Store Fixture Co. v. Patten,* 183 Pa.Super 249, 130 A.2d 271 (1957); *Batcheler v. Lally,* 66 D. & C. 25 (1948); *In re American Pile Fabric Co.,* 85 F.2d 961 (3rd Cir. 1936); *Kennedy v. Crumlish,* 85 F.2d 665 (3rd Cir.1936); *Delaware County Nat'l Bank v. Montgomery,* 78 F.2d 616 (3rd Cir.1935); *In re Highland Silk Co., Inc.,* 41 F.2d 404 (D.C. E.D.Pa.1929); *Ridgway Dynamo & Engine Co. v. Werder,* 287 Pa. 358, 135 A. 216 (1926); *In re Rodgers & Hite, Inc.,* 143 F. 594 (D.C. E.D.Pa.1906); *Vail v. Weaver,* 132 Pa. 363, 19 A. 138 (1890).

■ There is an exception to this rule which will be discussed here only for completeness. Intention plays no part at all in cases falling within the parameters of the Assembled Industrial Plan Doctrine. That doctrine, first adopted in Pennsylvania in *Central Lithograph Co. v. Eatmor Chocolate Co.,* 316 Pa. 300, 175 A. 697 (1934), states that a real estate mortgage on an industrial plant extends not only to the realty, but also to all equipment on the premises which is necessary for the plant's operation. This doctrine has been held applicable to residential property as well.

*See Holland Furness Co. v. Suzik,* 118 Pa.Super. 405, 180 A. 38 (1955).

However, it is clear that a residence is fully operational without the addition of a swimming pool, either above-ground or installed. Therefore, it appears to this Court that the Assembled Industrial Plant Doctrine is inapplicable to this case.

■ Having so stated, we return to the questions of annexation, adaptation, and intention. The swimming pool in question is a fully above-ground structure. It is put together in sections, and is made of aluminum, a lightweight metal. The only connection to the real estate, aside from gravity, is an electrical line, used to operate the water pump and filters. In order to remove the pool, one would necessarily need to remove any water contained therein; the only remaining necessity for removal would be to unplug the electrical line and disassemble the component parts.

This hardly appears to be a true annexation to the real estate. The only conceivable damage to this real estate would be the absence of grass on the area where the swimming pool previously rested. This cannot be interpreted as being a "material injury to the freehold" by any stretch of the language.

In contrast, if this were an in-ground pool, removal would require significant excavation of the cement foundation and walls, and reconstruction of the grounds.

There is no indication that the real estate was in any way specially adapted for the swimming pool's installation. The pool was rather large, but the only necessity for its use was a large open space of land. No underground plumbing was required, nor was it necessary to build a foundation before the pool could be erected.

Again, for the purposes of comparison, if this pool were constructed in-ground, the land would necessarily have been significantly adapted for that purpose.

We are left, again, with the question of the intention of the parties. As stated previously, it is the intention at the time the chattel was placed on the real estate

with which we are concerned. By intention, however, we do not mean the parties' collective state of mind, but rather, the intentions manifested by the documents executed and the parties' actions with respect to one another.

Failure to "attach" to the realty gives an insight into the intention of the parties. Furthermore, the Installment Sales Contract specifically states that the holder obtained a security interest in the goods covered by the contract. The pool was installed prior to the Debtors becoming the deeded owners of the real estate and, therefore, prior to the recording of the Mortgage thereon. The Mortgage, however, does not state with any specificity that it includes the swimming pool.

That the Mortgage particularly identifies one "frame dwelling house" as being appurtenant to the real estate, leads this Court to believe that if the Bank had relied upon the value of the pool in making this Mortgage, said pool would have been listed in the Mortgage. As the pool is not listed, the Court finds that the Bank did not intend the Mortgage to cover the pool; and therefore, did not consider the pool to be a fixture thereon.

The Court therefore holds that the above-ground swimming pool in question is personalty and not a fixture, thereby not requiring Old Republic or its assignor to execute a "fixture filing" in order to obtain a perfected security interest.

■ The remaining issue to be resolved is the validity of Old Republic's security interest in the swimming pool, and subsequently, in the proceeds of its sale. No one has argued that the original party to the contract, BPI, held a valid and perfected security interest in consumer goods. Since we have already determined that the swimming pool retained its chattel character even after its installation, the perfected security interest covering it would continue. The real issue is whether that security interest now belongs to Old Republic.

The sale of the contract, including the security interest, to Mellon, has not been disputed. Even if such were disputed, it is clear from the pleadings that BPI sold its interest in the contract to Mellon. 13 Pa. C.S.A. § 9302(b) provides that a perfected security interest, assigned by the secured party to another, retains its perfection without a new or additional filing on the part of the assignee. Therefore, Mellon received a perfected security interest in consumer goods.

The Bank asserts that if Mellon did indeed possess a perfected security interest in consumer goods, the assignment to Old Republic transferred only the confessed judgment and no more. We cannot agree.

The Assignment of Judgment, Bank Exhibit No. Two, lists the following items as being assigned: judgment, debt, costs, attorney's fees, and interest thereon. The assignment of the debt must, by its very nature, include those rights which created the debt. Those items include not only the judgment, but also the rights existing prior to the entrance of the confessed judgment, *inter alia*, the contract, the contract addendum, and the security interest thereon.

As Mellon possessed a perfected security interest in the swimming pool, its assignment of that security interest to Old Republic required no new or additional filing to continue the protection. 13 Pa. C.S.C. § 9302(b).

Therefore, this Court finds that Old Republic has a valid, perfected security interest in the sale proceeds of the swimming pool, minus the $150.00 allowed to the Debtor's counsel for the professional fees incurred in bringing the sale.

An appropriate Order will be issued.