# Christian *versus* Dripps.

<table>
<tr><td>28</td><td>271</td></tr>
<tr><td>160</td><td>307</td></tr>
<tr><td>28</td><td>271</td></tr>
<tr><td>166</td><td>227</td></tr>
</table>

When the objection to evidence is general it cannot be sustained, if the matter offered is evidence for any purpose.

Where a party caused certain articles to be attached as personal property, it would not estop him from claiming them as fixtures pertaining to real estate.

<table>
<tr><td>28</td><td>271</td></tr>
<tr><td>37SC</td><td>5253</td></tr>
</table>

Where two persons were engaged as partners in a manufactory, and a third person was taken in as a partner, and the real and personal property was charged on the books as partnership property, and the incoming partner put in certain machinery with which he was credited, it was held, that such machinery became fixtures independent of the question of the ownership of the real estate.

Where the party occupies, not as tenant but as a claimant or owner, the machinery becomes fixtures, although his title to the real estate might be defeated for want of a compliance with the requirements of the Statute of Frauds and Perjuries.

A planing machine, lathes, and vices in a machine shop or car factory, are fixtures, and as such belong to the realty, irrespective of the manner in which they are attached to the building in which they are used, if they were a necessary part of the machinery for carrying on the business.

The rule of law in relation to fixtures cannot be evaded by proving a custom in opposition to it. Such evidence is inadmissible.

ERROR to the Common Pleas of *Chester county.*

[Christian *v.* Dripps.]

This was an action of *replevin*, in which William Dripps was plaintiff, and Joseph M. Christian defendant.

William Dripps, the plaintiff, was the owner of a foundry and machine shop in the village of Midway, which, on the 1st December, 1851, he sold by articles of agreement to Henry Bisbing and John P. Burn, to deliver them possession on the 1st of April, 1852, for the sum of $13,000; $1000 thereof, and for which they gave their promissory note, payable on the 1st April, 1852, and the balance in annual payments of $2000, Dripps to make them a deed when the amount of $4000 should have been paid; and the balance of $9000 to be secured by a mortgage on the premises. Bisbing & Burn made the payment of $1000 due on the 1st April, 1852, and the payment of $2000 on the 1st April, 1853, together with $720, the interest due at that time.

On the 20th June, 1853, the defendant, Joseph M. Christian, joined them as a partner in the establishment, and the following entry was made in their day-book :—

"Midway, June 20, 1853.

"Henry Bisbing, John P. Burn, and Joseph M. Christian, associate themselves together mutually for the purpose of carrying on the foundry, car building, and general machine business, in the village of Midway, Chester county, Pennsylvania, Bisbing & Burn transferring to said firm such of their liabilities and resources as may be mutually agreed upon, and Joseph M. Christian investing tools, stock, and cash to the amount of $2800, profits and losses to be equally shared, after paying each party interest on his investment."

The defendant objected to the admission of the books in evidence, but the court overruled the objection and admitted them, and sealed a bill of exceptions thereto at the instance of defendant's counsel.

There are no signatures to this statement. Immediately after it follows first a statement of the assets of the firm of *Bisbing & Burn*, consisting of the real estate, patterns, tools, sundry fixtures, amount of stock, and various book accounts, amounting to $31,582.63; secondly, a statement of the liabilities of the firm of *Bisbing & Burn*, consisting of bills of iron, unpaid balance due upon the real estate, and various other debts, amounting in all to $21,865.94; and thirdly, a credit given Joseph M. Christian of $1100 for tools and stock, and $2000 for cash. There are no signatures to any of these statements, and they are in the same handwriting as the body of the book. The firm of Bisbing, Burn & Christian continued until March, 1854, when Bisbing, one of the original partners, left it, and a new firm of Burn & Christian was formed. This firm remained in possession, and on the 8th day of March, 1855, Joseph M. Christian, one of

[Christian *v*, Dripps.]

the partners, removed *certain of the tools he had brought with him*, consisting, among other smaller articles, of three turning lathes, one planing machine, and five machine vices.

On the same day Dripps began proceedings in the nature of attachment, before a magistrate, and at his instance a warrant was placed in the hands of the constable, who, by virtue thereof, and by the directions of Dripps, attached the property thus placed in the care of Mr. Christian. On the same day the writ of replevin in this case was issued, and by virtue of it the sheriff replevied a portion of the property in the case, consisting of the three turning lathes, one planing machine, and three machine vices, and delivered the same to Dripps. He also obtained judgment before the magistrate afterwards in his proceedings of attachment.

In February, 1855, the instalment due on the 1st April, 1854, being unpaid, Dripps brought an action of ejectment to enforce the payment thereof. The writ in that case was set aside, owing to an irregularity. Another ejectment was commenced on the 9th March, 1855.

On the trial in the court below, the defendant presented the following points :—

1. If Joseph M. Christian was a partner only in business with John P. Burn and Henry Bisbing, and not a grantee or owner of the real estate, Joseph M. Christian might lawfully, with the consent of him or those with whom he was associated in partnership, remove such tools, implements, or machinery which he had brought with him on his accession to the partnership, and the plaintiff cannot recover.

2. There is no privity between Joseph M. Christian and William Dripps the plaintiff; and if the equitable grantees of Dripps assented to the removal of such tools, implements, and machinery as Christian had added to the establishment on his contract with Burn & Bisbing, such removal was legal, and the plaintiff is not entitled to recover.

3. If the jury believe that the articles of property replevied in this case were attached by the plaintiff under process as personal property, he cannot now be admitted to aver that they were real estate, and the plaintiff is not entitled to recover.

4. The evidence is uncontradicted that the plaintiff attached the contents of a certain car, of which the articles in dispute were a part as personal property, and that he obtained a judgment on the docket of H. G. Thomas, Esq., by virtue of the proceedings in the attachment, which judgment still exists as a valid judgment against John P. Burn and Joseph M. Christian, and if such are the facts the plaintiff cannot recover.

5. If the plaintiff had attached the articles in dispute, and they were in possession of the constable at the time the writ of replevin issued, the plaintiff is not entitled to recover.

VOL. IV.—18

[Christian *v.* Dripps.]

6. If even the property replevied was real estate after it was taken and put up in the machine shop, still the defendants, as owners of the real estate, had a right to sever it at any time during the continuance of that estate, and that estate continued till after the property was removed.

The court below (HAINES, P. J.), after reciting the facts, charged the jury as follows:—

"In this state of things, on the 8th day of March, 1855, Mr. Christian removed a part of the machinery in the foundry out of the building, and placed it in a car for the purpose of taking it to Philadelphia. While it was there, Dripps, the present plaintiff, believing it belonged to him as the legal owner of the real estate, obtained a writ of replevin, which he placed in the hands of the sheriff, and the property in the writ mentioned was replevied. It was taken out of the hands of Mr. Christian and placed in the hands of Dripps, he having entered into bond to return the property or its value, if it should be determined not to belong to him. Mr. Christian, had he given bond to the same effect, could have held the property; but refusing, or failing to do so, it was handed over to Mr. Dripps. It is for you to say to whom that property belonged at the time it was taken, and the value thereof, and this is the question you are now called on to determine. Should you come to the conclusion that the property replevied belonged to Mr. Dripps, you will find for the plaintiff, with such damages as you may consider just for the taking and detention by the defendant; but anything excessive would, in the opinion of the court, be improper, inasmuch as it seems to be a question simply to try the right. Should you, on the contrary, find for the defendant, Mr. Christian, it will be your duty to find the value of the goods taken, at the time they were taken by the plaintiff, together with interest in the shape of damages on the value found, from the taking to the present time.

"A legal question or two have been argued, and certain points have been pressed upon my attention, to which it is my duty to respond. From the hasty examination I have been enabled to bestow on these questions during their argument, I may run into an error; but if so, it is a matter of pleasure to know that the decision I here give will be rectified by the Supreme Court of the state. It cannot be concealed that whether Mr. Christian went into the firm as part owner of the real estate or not, is a question not without doubt. After such deliberation as I have been enabled to give the subject, I have come to the conclusion that he did. The book containing the agreement, the statement of liabilities and resources, and the amount of stock brought in by him, have brought me to this conclusion. The evidence upon this point is for the jury, and if believed by you, it will in law constitute the defendant part owner of the real estate. This determination

[Christian v. Dripps.]

will, it seems to me, dispose of the first and second points of the defendant, as the alternative whereon they are predicated is not admitted. Another question arising in the cause is, whether the three lathes in controversy were attached to the freehold, and became a part of the real estate. No case in the books presents a parallel condition of things. Indeed, it is well said by a judge of the Supreme Court of the state of New York, 'that neither the elementary writers, nor the reported cases, furnish any precise or certain rule to determine what a fixture is.' Each case must depend on its own peculiar circumstances. In the case we are called on to determine, I am of opinion, that if the jury believe the evidence, the three lathes in dispute were attached to the freehold and became part of the real estate.

"It cannot be disputed that the legal title to the real estate remained in William Dripps, the vendor, notwithstanding his sale of the premises to Bisbing & Burn, and he had a right at law to its possession upon default having been made by the vendees in any of their payments under their articles. Here, while the article required the payment of $2000 annually on the 1st day of April, together with interest on the sum remaining unpaid, no money was paid to Dripps after the 1st day of April, 1853. Such default having been made, the vendees, although in the actual possession, had no right to sever the said lathes from the freehold. The evidence is not disputed that Christian removed these lathes on the 9th of March, 1855, from the foundry, under the circumstances detailed, but such severance did not make them Christian's; for although they thereby became personal property, they remained the property of Wm. Dripps, the plaintiff, and can be recovered in this action. This is my view of the case. I will further add, in accordance with the plaintiff's fifth point, that even if Joseph M. Christian was not part owner of the real estate, Bisbing & Burn being the owners thereof at the time the firm of Bisbing, Burn & Christian was formed, became so far the owner of the lathes and other machinery brought into the common stock by Christian, that, when attached by them, the lathes became part of the freehold.

"The 3d, 4th, 5th, and 6th points of defendant are disaffirmed. I do not consider the circumstances attending the attachment by the plaintiff of certain property in the car upon the railroad, as of a character to deprive him of his action of replevin. Numerous articles were there, which were never claimed by Mr. Dripps as his property, but which really belonged to Mr. Christian, and were legally subject to the attachment here spoken of. If the lathes were the property of the plaintiff when attached to the freehold, they were his property also when severed therefrom; and he had the right to replevy them at the time and place where the writ was executed, notwithstanding the issuing of the attach-

[Christian *v.* Dripps.]

ment at his instance. We disaffirm all the defendant's points after the second."

The jury found for the plaintiff, with 6 cents damages and 6 cents costs. A motion for a rule for a new trial was overruled, and judgment entered on the verdict.

The defendant then purchased this writ and assigned for error, The answer of the court to the points presented; the general charge of the court; the admission of the book in evidence; and the omission to answer defendant's first and second points.

*J. J. Lewis*, for plaintiff in error.

*P. F. Smith* and *Butler*, for defendant in error.

The opinion of the court was delivered by

KNOX, J.—A brief statement of the facts of this case is necessary to a proper understanding of the legal questions which are raised by the errors assigned.

On the 1st day of December, 1851, William Dripps by articles of agreement sold to Henry Bisbing and John P. Burn certain real estate, including a foundry and machine shop, for the sum of thirteen thousand dollars. In April, 1852, Bisbing & Burn took possession of the property, and as factors carried on the foundry and machine business. In June, 1853, Joseph Christian became a partner in the firm for the prosecution of the same business. At this time there was due to Dripps on the real estate about ten thousand dollars. The article of agreement which was entered into between Bisbing, Burn, and Christian, was not produced upon the trial; but in its absence the plaintiff gave in evidence an entry upon the firm books, made at the commencement of the partnership, by which it appeared that the real estate purchased from Dripps was credited to Bisbing & Burn, together with the stock on hand and the debts due to the firm, and they were charged with the unpaid purchase-money on the real estate and the debts which the firm owed. Joseph Christian was credited with cash $1100, and amount of tools and stock put into the business by him $2000—embracing, amongst other articles, three turning lathes, one planing machine, and three machine vices, which were put up in the machine shop.

In March, 1854, Bisbing left the firm, and the business was carried on by Burn & Christian until March, 1855. In February, 1855, Dripps, the owner of the legal title, commenced an action of ejectment against Burn & Christian, to recover the unpaid purchase-money; and in March, 1855, Christian detached from the building the lathes, and removed them, together with the planing machine and machine vices.

[Christian *v.* Dripps.]

These articles were first attached by Dripps upon a writ issued by a justice of the peace, but were subsequently replevied as having been part of the *realty*. The lathes, vices, and planing machine were delivered by the sheriff to Dripps, the plaintiff in the replevin; but the machine vices and planing machine were returned to Christian.

The question in the court below was, whether the lathes, before severance, were real estate, and as such belonged to the owner of the legal title? The defendant alleged:

1st. That the plaintiff was estopped from claiming the lathes in this action of replevin in consequence of his proceedings by attachment.

2d. That the lathes in question were not fixtures, even if they belonged to the owners of the freehold.

3d. That Christian had no interest in the real estate except as tenant, and therefore had the right to remove fixtures erected by him.

Upon the admission and rejection of evidence, and instructions given and refused to be given to the jury, sixteen errors are assigned.

It is not necessary, however, to give a separate examination to each assignment; for they are all included in the following questions :—

1. Did the court err in admitting the day-book of the firm of Burn, Bisbing & Christian?

2. In refusing to charge that the plaintiff was estopped from claiming the lathes as fixtures, because he had previously attached them as personal.

3. In charging the jury, that if the evidence was believed, Christian was part owner of the real estate; and that whether he was or not, when the lathes became the property of the firm, and were by the firm attached to the freehold, they became part of the freehold, and could not be severed by an individual member of the firm, so as to affect the right of property in the owner of the legal title.

4. In overruling the defendant's questions as to custom and damages, upon which his 15th and 16th errors are assigned.

1. The objection to the admission of the day-book was *general*, and cannot be sustained if the book was evidence for any purpose. That it was evidence for the purpose of showing the partnership, its terms, and that the lathes in question were sold by Christian to the firm, appears to be too plain to admit of denial. There was, therefore, no error in receiving the evidence. Whether there was error in the effect given to it, belongs to another branch of the case.

2. The seizure by the constable of the lathes upon the attachment, can in nowise affect the question of property. Even if the

constable acted under the direct instructions of the plaintiff, it would only tend to prove that the plaintiff was uncertain whether the lathes were real or personal property. A mistake in this respect would not prejudice his legal rights; for neither the principle of estoppel, nor the doctrine of election, applies to a case like the present. It would be a harsh rule that would take away a man's property for error in judgment upon a legal question of so difficult solution as that which relates to the law of fixtures.

3. Were these lathes fixtures independent of the question of ownership of the real estate? Whether Christian had such a title to a part of the real estate as to prevent the statute of frauds from defeating it, is a question by no means free from difficulty. Be this as it may, there is no pretence for alleging that he was in possession as a tenant merely. It is plain, from the entry in the partnership book, that the real estate was treated as the joint property of the firm, and the possession of each member of the firm was in all respects like that of the other partners. All were in possession as owners, and none as tenants. They were neither paying rent to each other nor to any other person. So too the lathes were the property of the firm. Originally belonging to Christian, he had transferred them to the firm of which he was a member, and he had no more right to remove this particular property than he would have had, had it been purchased and put into the building after he became a partner. Under this state of facts, were these lathes fixtures? Did they constitute part of the real estate, the legal title of which was in the plaintiff? If so, then the severance, though it may have changed the character of the property, did not transfer the ownership: Roberts *v.* Dauphin Deposite Bank, 7 *Harris* 71.

The Court of Common Pleas instructed the jury, that if the evidence was believed, the lathes were attached to the freehold, and became part of the real estate.

There was some contrariety in the evidence respecting the manner in which the lathes were put up in the machine shop. Mr. Bisbing, one of the partners, testified that the largest lathe stood on blocks, and that the lathe and blocks were fastened to the floor by screw bolts, and that the counter shaft for running the lathe, and which was part of it, was fastened by bolts to the ceiling; and the other lathes were fastened to the floor by driving staples across the feet to the floor, and the counter shafts bolted to the ceiling. All the lathes were run by steam power, but one was rigged for foot power, and partly worked with a treadle. Another witness, Ezekiel Mann, said the lathes were all fastened to the floor by staples or hooks. On the part of the defendant, it was stated by one witness that the lathes were not fastened to the floor in any manner. But the question is not whether these lathes were bolted and strapped to the floor and

[Christian v. Dripps.]

ceiling; for if they were a necessary part of the machinery for carrying on the business of the machine shop, they belonged to the manufactory, whether bolted to the floor or not. That a machine shop for manufacturing railroad cars would be incomplete, if not useless, without lathes, is almost a self-evident proposition; and that one of these lathes was little used, is not material, for the character of the machinery does not depend upon its frequent use, nor upon its precise adaptation to the purposes for which it is intended. In Voorhis v. Freeman, 2 *W. & S.* 116, duplicate rolls in an iron rolling-mill were held to be fixtures, because they might be wanted in an emergency, as those in use were liable to be broken. Voorhis and Freeman, where it was held that the rolls of a mill were part of the freehold, because they were necessary in manufacturing iron, followed as it was by Pyle v. Pennock, 2 *W. & S.* 390, and repeatedly recognised by subsequent cases, is of unquestioned authority; and the principle there ruled is applicable to the case in hand, for it is clear that lathes are as necessary in a machine shop as rolls are in a rolling-mill. It was not in the power of the defendant to evade this rule of law by proving that there was a custom in opposition to it; and the rejection of the question relative to damages, even if erroneous, becomes immaterial by the verdict of the jury.

Judgment affirmed.