**Roos et al. *v.* Fairy Silk Mills (Berks Co. Trust Co., Appellant).**

306

Argued January 23, 1939. Before KEPHART, C. J.,
SCHAFFER, MAXEY, DREW, LINN, STERN and BARNES, JJ.

*Earl G. Harrison,* with him *J. Wilmer Fisher, Richard
T. Williamson* and *Harry E. Sprogell,* for appellant.

*Harry R. Matten,* with him *Charles W. Matten,* for
appellee.

OPINION BY MR. CHIEF JUSTICE KEPHART, April 17,
1939:

The Berks Knitting Mill Company, Inc., conveyed its
Belle-Terre plant to Stanley L. Bellemere late in 1929.
Early in January, 1930, Bellemere applied to the Berks
County Trust Company for a loan of $30,000.00, secured
by a first mortgage on the property. The Berks Com-

pany made an appraisement of the plant; it was then fully equipped and operating as a hosiery mill. Belle-mere's mortgage for the sum of $30,000, which was executed on January 15th, described the premises as: ". . . all that certain two-story factory building and lot or lots of ground upon which the same is erected, situated on the northwest corner of North Third and Bern Streets, in the City of Reading, County of Berks and State of Pennsylvania, bounded and described . . ." and contained the following clause: "Together with all and singular the buildings, rights, liberties, privileges, hereditaments and appurtenances to the same belonging, or in anywise appertaining, and the reversions, remainders, rents, issues and profits thereof." Bellemere, January 16, 1930, conveyed the property to the Belle-Terre Hosiery Company, which assumed the mortgage, and that company, October 1, 1931, conveyed it to the Fairy Silk Mills, which likewise assumed the mortgage.

In 1932 the Fairy Silk Mills company created another mortgage on all of its property, specifying buildings and machinery, the Belle-Terre plant being included, with the Reading National Bank and Trust Company as mortgagee. This mortgage recognized the priority of the Berks mortgage. On August 25, 1934, by regular proceeding, a receiver was appointed for the Fairy Silk Mills on the petition of E. M. Roos and A. L. Loy. An offer was made to the receiver of $40,000 for all the machinery in the Belle-Terre plant, free and clear of encumbrances. The receiver petitioned the court for leave to sell on the offer thus made. The petition for sale, however, treated the Berks mortgage as not applying to the machinery, but the notice of the proposed sale, sent to all creditors and parties in interest, gave no indication of the supposed priority or standing of liens; it merely stated the machinery would be sold unencumbered, "the liens to be transferred to the proceeds." The Berks Company was not represented at the hearing, and the court ordered the sale.

On May 6, 1936, the Berks Company requested the court to distribute the $40,000, and make payment to it on account of its mortgage of $30,000. After several hearings the court, on further accounting, ordered distribution of the fund to the Reading Trust Company. Upon dismissal of the exceptions filed by the Berks Company, this appeal was taken.

There is no dispute as to priority of liens in respect to the land and building, but it is contended by appellant Berks Company that its mortgage covers the machinery in the Belle-Terre plant and therefore it is entitled to payment out of the proceeds from the sale thereof. It is conceded that the second mortgage is the mortgage of Fairy Mills Company, and the fact that strawmen executed it is immaterial.

The law on the subject of imposing a lien on what is in itself personal property, but which when used in or about a manufactory or similar industry is accorded a realty standing, has been stated by the Court in a number of cases. Generally speaking, at common law in Pennsylvania a mortgage lien on personal property could not be obtained by an ordinary mortgage or by a chattel mortgage,* but could be obtained where personal property was attached to real property as a fixture.

Due to the demands and requirements of our changing economic order, we early developed in this State the principle of an "industrial mortgage" which included, as part of the freehold, personal property in and about a manufactory. This principle became more important as our industrial life expanded, so that the necessary credits to sustain and finance manufactories and other

---

* The legislature, from time to time, has authorized chattel mortgages on certain types of personal property; see the Acts of April 5, 1853, P. L. 295; April 27, 1855, P. L. 368; March 21, 1862, P. L. 149; May 18, 1876, P. L. 181 (expired); April 28, 1887, P. L. 73, as amended May 20, 1891, P. L. 102; May 13, 1889, P. L. 197; March 7, 1929, P. L. 14; March 2, 1933, P. L. 6, as amended April 18, 1935, P. L. 38; July 15, 1936, P. L. 47.

like industries could be obtained with some degree of certainty that the security offered would be continued. Therefore, it was held that where premises were used in manufacturing or a similar industry, the real estate and personal property necessary to the plant as a going concern were subject to the lien of an industrial mortgage. This opened the way for persons interested in such industries to assure investors in a manufactory not only of a stable security for money loaned on the plant, but one that could not be broken down and destroyed by selling it piecemeal.

The rule removed the unwieldy and strict rule of the common law relating to chattels as applied to manufacturing establishments. Chief Justice GIBSON, in *Voorhis v. Freeman,* 2 W. & S. 116 at 119, in reversing an earlier decision, *Chaffee v. Stewart,* (unreported), holding that spindles and other unattached machinery of a plant were personal property to be sold on an ordinary execution, announced the Pennsylvania rule, in a case which involved soft and chilled rolls lying loosely in an iron mill, that "Whether fast or *loose* all the machinery of a manufactory which is necessary to constitute it, and without which it would not be a manufactory at all, must pass for a part of the freehold," and held that the rolls, though personal property, could only be sold on a levire facias issued on mortgage. This case was later reviewed in *Commonwealth Trust Co. v. Harkins et al.,* 312 Pa. 402, where the mortgage lien similarly was held to include not only the building and the ground of the manufactory, but also the machinery housed therein. We said of that case in *Central Lith. Co. v. Eatmor Choc. Co. (No. 1),* 316 Pa. 300, at 304-305, in reference to industrial mortgages: "In *Commonwealth Trust Co. v. Harkins,* 312 Pa. 402, in which we considered all our preceding cases bearing on the question we are now reviewing, whether cited or not, we laid down the broad principle that all machinery in a manufacturing plant, necessary for its operation as a complete going concern, is part of

the freehold and bound by the lien of a mortgage thereon."

In the Harkins case, at p. 410, the Court also stated: "building and appurtenances [a clause similar to the appurtenance clause in the mortgage now before us] . . . would include all machinery and fixtures going to make up the establishment as a completed plant," citing *Blaine .v. Chambers,* 1 S. & R. 169. The scope of such clause was mentioned in *Voorhis v. Freeman,* 2 W. & S. 116, where complaint was made that there were no words in the mortgage to describe the rolls; we said at p. 120: "Were it necessary, we would further hold that they might have passed . . . by force of the word apparatus in the description of the premises."

Appellee earnestly argues that it is the intention of the parties that controls, and it was not the intention of the first mortgagee to have its lien cover the machinery and equipment in the Belle-Terre plant, but merely the actual land and building alone. Appellee bases his argument on the Harkins case, 312 Pa. 402 at p. 407, quoting the following: "In the instant case the intent manifested by the mortgage itself, the surroundings of the parties and the testimony of the witnesses was to mortgage an industrial plant and not the land and building alone." Appellee states that in the case before us the circumstances surrounding the parties would not indicate a mortgage of an industrial plant and that there was no testimony on the part of appellant to support such intention.

The Harkins case does not stand for the proposition that the coverage of the mortgage depends upon an unexpressed intention of the parties which must be proved by the mortgagee. To so hold would be to establish a secret lien which this court has repeatedly condemned. Such conclusion would present a fertile field for fraud in contesting the coverage of a mortgage. The facts of that case and the entire opinion must be considered. What was held was that the appurtenance clause, of it-

self, when used in a mortgage of an industrial plant where the plant was a going concern, was sufficient to carry the lien of the mortgage to the machinery; but in the Harkins case while there was no building or machinery on the ground when the mortgage was given, the loan was made under the express condition that it was to be used to build the plant, which was to come under the mortgage. This condition, with a reference to the specifications for the proposed plant, was contained in the first mortgage bond and was therefore of record; the mortgage expressly embraced the completed structure. Further, the second mortgage was given while the factory was in the course of completion. There was no question of secret liens but, instead, constructive notice of record, and, under all the circumstances, the second mortgagee must have known of the conditions on which the first mortgage was given, unless grossly or wantonly negligent.

But here we have a plant in full operation. The words of the descriptive clause in the mortgage before us convey "all that two-story *factory* building and lot." This of itself gives notice of an "industrial mortgage." The burden *was not on appellant,* Berks Company, to explain its expressed intention, or the meaning of the words in the mortgage. But in further answer to appellee's contention, even if it were well grounded, appellant did show an appraisement before lending; that the plant was then a going concern, and that it appraised the equipment housed therein along with the building, from which it could be found the loan was made thereon. It also appeared the Belle-Terre plant is a highly specialized one of light construction, the value of which depends largely on whether equipped or unequipped. If it could be used in its present condition, its value would be between $29,000 and $40,000; otherwise its value is about $19,000.

The words of an appurtenance clause used in a mortgage such as this cannot be limited to a different mean-

ing unless the testimony comes under the rule of evidence necessary to reform a written instrument. The burden would be here on appellee as the one who benefits by the reformation.

After notice of the receiver's sale of machinery was sent to the Berks Company, it did not appear or in any way object to the contents of the petition which designated the second mortgagee as the one entitled to the proceeds of the sale of the machinery. This, it is urged, was an admission that appellant had no claim to such proceeds, or was a waiver of its right to such proceeds. As stated above, there is nothing in the notice which warned appellant of the nature of the receiver's petition; it stated that unless objections were made, the court would approve a sale of the machinery for $40,000, "free of encumbrances, the *liens* to be transferred to the proceeds."

Conceding for the moment that first liens could be thus unseated or waived, or that a lienor might be estopped by such conduct to assert his lien, neither waiver nor estoppel are shown by these circumstances. There was no necessity for appellant to attend the hearing or object, since the notice did not purport to affect the priority of its record lien, nor is there any evidence that appellant actually knew of the nature of the petition. It is argued that appellant's attorney knew all the facts, since the general counsel for the Berks Company was also of counsel for the receiver, and the attorney who presented the receiver's petition for sale was associated with appellant's general counsel in the practice of law. Even though appellant's attorney knew the nature of this petition, this fact standing alone would not amount to a waiver of his client's lien; a different question would be presented if it appeared that the client authorized or consented to such waiver, but no such consent or authorization appears. While an attorney has power to bind a client in certain instances, he cannot release a client's lien rights without express consent. See the dis-

cussion in the recent case of *Starling, Exr., v. West Erie Ave. B. & L. Assn.,* 333 Pa. 124.

Even assuming a mistake had been made at the proceedings for sale as to the extent of the respective liens, no one was injured thereby. When the petition for sale was presented the parties interested were creditors then in existence. An offer was made and accepted, provided the property was sold clear of liens—the price was adjudged to be fair. The receiver's petition to have the proceeds distributed to Reading Company foreclosed any complaint from the purchaser that the property was not clear of liens. Until someone was prejudiced in a legal sense, appellant was not estopped by not appearing. The proceedings for sale did not involve the question of who held the prior lien, and it would be unusual to displace a lien merely because in a collateral proceeding, the first mortgagee failed to attend the hearing. Contract rights cannot be affected by judicial proceeding unless the particular right is in issue in a cause in which the party had notice of such issue, and in which the action of the court is definitive of that issue. Here appellant's right became an issue only on distribution. There is no estoppel.

The decree of the court below is reversed, distribution to be made according to this opinion. Costs to be paid by funds in the hands of the receiver.