## Equipment Finance, Inc. v.
## Pennsylvania Bank & Trust Company

*Mark D. Prather,* of Prather & Prather, for plaintiff.

*John V. Pepicelli,* of Pepicelli & Pepicelli, for defendant.

THOMAS, P. J., March 24, 1972.—

## BACKGROUND

On December 1, 1964, Hergert L. Partridge executed a mortgage to the Merchants Bank and Trust Company (now Pennsylvania Bank and Trust Company) covering 80 acres of land in Hayfield Township, Crawford County, and having thereon a dwelling house and sawmill (see Mortgage Book 298, p. 114). The language of the mortgage and intent of the parties was to create an "assembled manufacturing plant mortgage" under the century old, court created, Pennsylvania Industrial Plant Doctrine.

On September 12, 1967, Partridge purchased a Hough Diesel Log Skidder 27B from State Equipment Company and the same was financed through Equipment Finance, Inc. An appropriate security agreement was executed September 18, 1967, filed in the Crawford County Prothonotary's Office on September 22, 1967, and in Harrisburg on September 25, 1967. This skidder was delivered at New Lebanon, Pa., (Mercer County), at a site where Partridge's brother, who was his logging boss, was cutting a timber stand for ultimate delivery of the logs to Partridge's sawmill in Crawford County.

The skidder is a bulldozer type of four-wheel vehicle with a curved blade on the front augmented by forks and is used to move, skid and load logs, and make logging paths. It is a "woods machine" not used as a part of the sawmill operation.

Partridge defaulted in mortgage payments to the bank, judgment was entered on the bond accompanying the mortgage and judgments were entered at Sep-

tember term, 1968, no. 296, and September term, 1969, no. 419. Executions were issued at E.D. No. 20 November term, 1969, no. 20, and November term, 1969, no. 22. The sheriff levied on the real estate, on the skidder here at issue, as well as on other personal property.[1]

On December 4, 1969, Partridge was adjudicated bankrupt, but by reason of a prior lien on the skidder, the referee disclaimed the same and it was sold by the sheriff in the bank's execution process.

Equipment Finance, Inc., filed an interpleader with the sheriff claiming title to the skidder; the bank objected, claiming a lien under the "Assembled Manufacturing Plant Mortgage Doctrine." The sheriff found in favor of Equipment Finance, Inc., under rule 3204, determining them to be the prima facie owner of the skidder.

By mutual agreement, the skidder was sold and the $4,000 proceeds held in escrow pending the outcome of this nonjury trial.

## ISSUE

The basic issue for resolution in this case is whether or not the skidder was such a chattel, fixture or piece of equipment to be classified as an essential part of the sawmill operation and vital to the production of the ultimate product emanating from the mill.

## DISCUSSION

In 1841, Chief Justice Gibson, in Voorhis v. Freeman, 2 Watts and Sergeant 116 (1841), laid the cornerstone of the now famous Pennsylvania Industrial Plant Doctrine in the following language:

---

[1] See related opinion in this same case, General Electric Credit Corporation v. Pennsylvania Bank and Trust Company filed this same date.

"Whether fast or loose, therefore, all the machinery of a manufactory which is necessary to constitute it, and without which it would not be a manufactory at all, must pass for a part of the freehold. This is no more than an enlargement of the principle of constructive attachment."

In the 131 years since Gibson's famous pronouncement, the Industrial Plant Doctrine has been firmly woven into the texture of Pennsylvania real and personal property law.[2] It has been stated that what has happened in the development of the doctrine is that an inference originally based upon the supposed intention of the parties to a mortgage transaction has crystallized into a rule predicated upon the desirability of protecting the safety of investments.[3]

We could serve no useful purpose in duplicating the analysis and development of the cases decided under this doctrine ranging from iron mill rollers of Voorhis, supra, through the lathes of Christian v. Dripps, 28 Pa. 271 (1857), the machines and tools essential to the foundry operation in Morris's Appeal, 88 Pa. 368 (1879), the candy making machine in a candy factory in Central Lithograph Co. v. Eatmor Chocolate Co., (No. 1), 316 Pa. 300, 175 Atl. 697 (1934), to the beer barrels of the brewery in First National Bank of Mt. Carmel v. Reichneder, 371 Pa. 463, 91 A. 2d 277 (1952). These cases are reviewed and analyzed in First National Bank of Mt. Carmel, supra, and Justice Stern summarized the Industrial Plant Mortgage Doctrine and the court's decision as follows:

"It will be noted from the quotations hereinbefore

---

[2] For a recent case of what is currently called the "Assembled Economic Unit Doctrine," see Singer v. Oil City Redevelopment Authority, 437 Pa. 55, 261 A. 2d 594 (1970).

[3] Effect of Uniform Commercial Code on the Pennsylvania Industrial Plant Doctrine, 16 U. Pitts. L. Rev. 89, 92 (1955).

made from the various cases referred to, that the machinery, equipment and chattels which pass under an industrial mortgage are those only which form essential parts of the plant for the purpose of manufacturing the product there made; in other words, such a mortgage does not include in its coverage everything used in *the operation of the business*, however important for that purpose, but only such articles as are contained in or about the premises and are essential to the *manufacture of the product.* We are constrained to hold, therefore, that of the chattels levied upon and sold by the sheriff under the judgment obtained by the First National Bank of Mount Carmel the following cannot be held to have been covered by the Bank's mortgage: flat-top desks, typewriters, safe, checkwriter, chairs, adding machine, filing cabinet, and the five trucks. This is especially true as to the trucks, since not only were they not a component part of the brewery itself nor essential to the manufacture of the beer, but they operated, of course, outside the mortgaged premises for ordinary delivery purposes the same as in the case of any other industrial or commercial establishment." (Italics in original opinion.)

See also P.L.E., Fixtures, §2, 5 and 7 for summary of many of the same cases.

Such was the law until Pennsylvania's pioneer adoption of the Uniform Commercial Code in 1954. It is obvious that the code, in section 9-313, 12A PS §9-313, does not come to direct grips with the problem of what "goods" become "fixtures" by attachment or association and in section 9-313(1) merely provides:

"The rules of this section do not apply to goods incorporated into a structure in the manner of lumber, bricks, tile, cement, glass, metal work and the like and no security interest in them exists under the Article unless the structure remains personal property under

applicable law. *The law of this state other than this Act determines whether and when other goods become fixtures.* This Act does not prevent creation of an encumbrance upon fixtures or real estate pursuant to the law applicable to real estate." (Italics supplied.)

We can only conclude therefore that precode cases are still controlling on the basic question of when goods become fixtures. It also seems obvious that the code and subsequent amendments did not abolish the Industrial Plant Doctrine.[4]

The language of the Partridge to bank mortgage creating the Assembled Manufacturing Plant Mortgage is as follows:

"It is specifically intended by the parties hereto that the premises herein mortgaged be considered as an assembled manufacturing plant, even if the law of Pennsylvania would construe it to be otherwise, and that in the event of default, or foreclosure, or the occurrence of any other event that may render the mortgagee insecure, the assembled manufacturing plant doctrine of Pennsylvania shall apply in favor of the mortgagee within.

"It is the intention of the parties, therefore, that the saw mill located upon the premises, in addition to the residence, and all outbuildings and structures of whatever nature, including all equipment, tools, parts, supplies and inventory, whether attached or unattached to the real estate, be considered part of the assembled manufacturing plant on the premises, which said plant is engaged in the manufacture and production of finished lumber from raw material.

"It is further intended by the parties that all build-

---

[4] See 16 U. Pitt. L. Rev. 89, supra, and Secured Transactions under U.C.C. (Matthew Bender & Co.), Vol. 2, Chapter 17 A., p. 1781, and especially § 17.13(1), Pennsylvania's Experience with Fixture Statutes, pp. 1832-1842.

ings, structures, mills, equipment, tools, parts and supplies and all chattels upon the premises constituting the assembled plant and necessary to the operation thereof, be and they are considered not only part of the assembled plant and the premises, but are to be considered covered under this mortgage, and that this mortgage is to cover in addition all after acquired chattels that may become part of the assembled plant in the future."

But as pointed out in the cases, the supposed intention of the parties, as deduced from the language, is not the controlling factor; but if a party makes a chattel a permanent part of a manufacturing plant, such chattel *by force of law* becomes a part of the real estate. See Central Lithograph Co. v. Eatmor Chocolate Co. (No. 1), 316 Pa. 300, 307, 175 Atl. 697, 700 (1934).

The skidder was used in the woods to move felled trees and logs, and was shuttled between timber tracts as Partridge contracted for timber cutting in various areas.[5] Although a representative of the agency that insured the skidder testified that he saw it several times parked at the sawmill, the logical inference from all the testimony was that it was either there for servicing or storage between cutting operations in the field.

The language of First National Bank of Mount Carmel v. Reichneder, supra, seems controlling of the skidder situation. Surely if desks, typewriters, safe, chairs, adding machines, filing cabinets and beer hauling trucks were not "a component part of the brewery itself," (as contrasted to the bottles, soakers, crowners and beer barrels that *were*), then a skidder used miles from the sawmill premises, not attached

---

[5] See plaintiff's Exhibit No. 6 for picture and description of the skidder.

thereto and not essential to the production *within* the sawmill of the end product emanating therefrom, cannot be considered such a fixture as to become part of the Assembled Manufacturing (sawmill) Plant Doctrine.

We stress again from Reichneder, that the test is *not* whether the chattel is directly or remotely used in the *operation of the business,* but rather. whether the chattel in question is essential *to the manufacture* of the product produced in the plant on the premises described in the mortgage. The skidder had no part in the internal operations of the sawmill necessary to turn out the cut, trimmed and sized lumber produced from the raw logs.

In accord with the foregoing, we conclude as a question of fact and law that the Hough log skidder remained an independent chattel subject to the security interest in favor of Equipment Finance, Inc., and did not become a fixture attached to the real estate as part of an assembled manufacturing plant and subject to the lien and judgment of the bank's mortgage. Since Equipment Finance, Inc., perfected its security interest in this skidder and since the same was not a fixture, they are entitled to priority of the proceeds of its sale.

Having decided this case on this basic issue, we need not then determine the effect of section 9-313 (Priority of Security Interests in Fixtures) on this transaction and the questions of whether a security interest was created and attached to the skidder before it became a fixture. For a discussion of this problem under different factual circumstances, see our decision in the case noted in footnote 1.

### ORDER

And now, March 24, 1972, the decision of the Sheriff

of Crawford County is sustained and a verdict is rendered in favor of plaintiff, Equipment Finance, Inc., claimant, and against the Pennsylvania Bank and Trust Company, defendant. Plaintiff is entitled to receive from the Sheriff of Crawford County from escrow funds specially held, the sum of $4,000, plus any earned interest thereon.

An exception is noted for defendant Pennsylvania Bank and Trust Company.