TEÓDULO LLAMAS, Petitioner, *v.* DISTRICT COURT OF PUERTO RICO, SAN JUAN SECTION, HON. EMILIO S. BELAVAL, JUDGE, Respondent. FERNANDO SIERRA BERDECÍA, SECRETARY OF LABOR, Intervener.

No. 1961. Argued October 1, 1952.—Decided October 24, 1952.

*Víctor Rivera Colón* for petitioner. *Joaquín Gallart Mendía* and *Guillermo Estrella Frasqueri* for intervener, plaintiff in the main action.

MR. JUSTICE PÉREZ PIMENTEL delivered the opinion of the Court.

We issued a writ of certiorari in this case to review a judgment of the former District Court of Puerto Rico, San Juan Section, ordering the petitioner to pay to three of its employees certain sums of money as extra hours worked during the days and hours when the establishment in which said employees rendered services should have remained closed to the public by provision of law.

Said judgment was rendered by the lower court upon entertaining, on appeal, a complaint originally filed in the Municipal Court of Puerto Rico, San Juan Section, by the Commissioner of Labor in representation and behalf of the workmen Guillermo Rosario Sánchez, Manuel Badillo González and Guillermo Ortiz Mangual. In that complaint it was alleged, in brief, that the aforesaid workmen worked for the respondent Teódulo Llamas in an ice factory in San Juan, Puerto Rico, in the following capacities, periods of work and weekly salaries: Guillermo Rosario Sánchez, tubber, from May 24, 1947, to January 31, 1951, for $18; Manuel Badillo González, carpenter, from 1945, to February 1, 1951, for $25; and Guillermo Ortiz Mangual, mechanic, from June 1947, to January 31, 1951, for $24; that in the course of these employments the said workmen worked during hours when the aforesaid establishment of the respondent should have remained closed to the public by provision of law, which hours were detailed in three exhibits attached to and made a part of the complaint and which cover the period between May 30, 1948, and January 11, 1951; that the respondent employer paid these extra hours to the workmen in question at the regular rate when he should have paid them at double rate, consequently owing said workmen the difference. The proper amount as liquidation of damages was also claimed in the complaint.

The respondent denied all the averments of the complaint and set up several special defenses, among others, "That the defendant's business in which it is alleged that the petitioners work, is one of those exempt by the provisions of Act No. 379 of 1948, Section 4, letter B."

In granting the complaint the court *a quo* decided that the establishment where the workmen in question work is not an *ice depot* but an *ice plant* and that, therefore, said establishment is not exempt from the provisions of the Act—§ 553 of the Penal Code—that regulates the closing of commercial and industrial establishments. The only question involved herein

is, thus, whether the said workmen worked in an establishment—"ice depot"—exempt by the provisions of the above-mentioned § 553 of the Penal Code (Closing Act for Commercial and Industrial Establishments) or in one not exempt —"ice manufacturing plant."

██ Section 4 of Act No. 379, approved May 15, 1948 (Act to establish the working day in Puerto Rico, Sess. Laws, p. 1254) provides as follows:

"Section 4.—Extra hours of work are:

".   .   .   .   .   .   .   .   .   .

"(d) The hours that an employee works for his employer during the days or hours when the establishment in which he renders services should remain closed to the public by provision of law; *Provided, however,* That the hours worked by an employee in the service of his employer during the days or hours in which the establishment must remain closed to the public shall not be considered extra hours of work, when the employer has obtained from the Commissioner of Labor the permit required by Act No. 80 of May 5, 1931, as heretofore or hereafter amended, and the total number of hours worked by the employee during said day does not exceed eight hours, and the total number of hours worked during the week does not exceed forty-eight hours." [1]

Then, § 5 of that same Act provides that every employer who employs or permits an employee to work during extra hours shall be obliged to pay him for each extra hour a wage rate equal to double the rate agreed upon for regular hours.

The closing of commercial and industrial establishments is regulated by § 553 of the Penal Code. [2] Said Section provides that *commercial and industrial establishments* shall remain closed to the public and one hour after closing no work

---

[1] The employer has not obtained the permit contemplated by this provision.

[2] This Section was re-enacted by Act No. 250 of May 9, 1950, (Sess. Laws, p. 656) but this fact does not affect in any way the question involved herein.

of any kind shall be carried out therein during the days and hours specified in said Section. Subdivision (*b*) reads as follows:

"(*b*) The following establishments shall not close to the public during such days and hours:

"     .     .     .     .     .     .     .     .     .

"4. Casinos, billiard rooms, *ice depots,* meat stands, and milk depots." (Italics ours.)

We must, therefore, determine whether the workmen in question worked, as petitioner herein alleges, in an *ice depot,* which is one of the establishments included in paragraph 4, copied above, as exempt from closing its doors to the public during the days and hours specified by the Act.

The respondent court decided that the establishment where the workmen work is an *ice plant* and that in it there is no *ice depot* such as the latter is known for commercial resale purposes. The petitioner argues that the aforesaid paragraph 4 of the Closing Act makes no distinction whatsoever between the one or the other kind of ice depots and that, therefore, the court *a quo* could not establish classifications therefor. In fact, what said court fundamentally decided, correctly in our judgment, was that the workmen in question worked in an ice plant or factory and not in an ice depot. We shall see. It appears from the record that there is no controversy as to the fact that the petitioner owns an ice factory located at Stop 2½ in Puerta de Tierra, and that the three workmen involved herein worked in said factory during the days and hours specified in the complaint; that said factory has in one and the same building its freezing tanks and storage rooms; once the ice is manufactured and as the last stage of that process it is removed by means of an electric crane to the cold storage rooms where it is placed to prevent it from melting until it is removed to the wagons (trucks) that distribute it to commercial establishments. Ice is incidentally sold in the factory to any person who may go there to buy it, but none of the workmen in question was en-

gaged in making said sales.  The work of Guillermo Rosario Sánchez [3] consisted in taking the ice from the freezing tanks with the electric crane in order to place it in the storage rooms; Manuel Badillo González worked as a carpenter repairing the body of the wagons used to distribute the ice to commercial establishments and Guillermo Ortiz Mangual worked as a mechanic repairing said wagons.

The cold storage rooms as well as the trucks (wagons), which trucks are used in the distribution of the ice, are an integral part of the petitioner's business known as an ice plant or factory.  All that equipment used to manufacture and distribute ice constitutes an operating unit.  As we said in *Caparra Dairy* v. *Tax Court*, 67 P.R.R. 292, citing *Otis Elevator Co.* v. *Arey-Hauser Co.*, 22 F. Supp. 4, the word "plant" was defined as follows:

"Within comparatively recent years our language has been enriched by a new use of the old word 'Plant'.  It is an organized physical equipment to produce any desired result, or, as it has been phrased, it is an 'operating unit.' "

It is disclosed by the record that the cold storage rooms where the ice is stored for preservative purposes are a necessary and indispensable equipment in the operation of the petitioner's plant and that the trucks (wagons) are used to transport the ice from the plant to the commercial establishments.  Therefore, we can not agree with the petitioner that the workmen in question worked for him in one of the establishments exempt from the provisions of the Closing Act.  When speaking of *ice depots* said Act certainly did not mean ice plants.  What the statute rather contemplates is a place or establishment where ice is usually kept for sale, namely, an establishment similar to meat stands and milk depots.

For the reasons stated the writ will be discharged.

Mr. Chief Justice Todd, Jr., did not participate herein.

---

[3] The manager of the petitioner's ice factory testified during the hearing that this workman was also engaged in the dispatching of the ice to the trucks that distributed it.